**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 24 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SUSAN RADECKI, Individually and
as personal representative of the Estate
of Chester A. Radecki, Deceased,
KRISTIN RADECKI; KERRY
RADECKI; RENEE RADECKI; and
ROBERT RADECKI,

        Plaintiffs - Appellees,

    v.

RON BARELA, personally and in his
official capacity; BENJIE
MONTANO, personally and in his
official capacity,

        Defendants-Appellants.

No. 96-2297

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D. Ct. No. CIV-93-1488-LH)**

---

Joseph F. Canepa, Canepa, Vidal & Fitzgerald, P.A., Santa Fe, New Mexico
(Martin Esquivel, Dines, Gross & Wilson, P.C., Albuquerque, New Mexico, with
him on the briefs), appearing for Defendants-Appellants.

Robert R. Rothstein, Rothstein, Donatelli, Hughes, Dahlstrom, Cron &
Shoenburg, LLP, Santa Fe, New Mexico, appearing for Plaintiffs-Appellees.

---

Before **TACHA**, **McWILLIAMS**, and **BALDOCK**, Circuit Judges.

**TACHA**, Circuit Judge.

At issue in this appeal is whether the district court erred in denying Defendant Ron Barela's summary judgment motion based on qualified immunity in this action brought against him under 42 U.S.C. § 1983. Plaintiffs are Chester A. Radecki's survivors. Defendant is a Santa Fe County, New Mexico Deputy Sheriff. Plaintiffs alleged that Deputy Barela violated Mr. Radecki's Fourteenth Amendment right to due process of law by creating a dangerous situation that resulted in Mr. Radecki's death. Deputy Barela moved for summary judgment on the basis of qualified immunity, and the district court denied his motion. We exercise jurisdiction under 28 U.S.C. § 1291. In light of the Supreme Court's recent articulation in County of Sacramento v. Lewis, — S. Ct. —, 1998 WL 259980 (U.S. May 26, 1998), of the degree of culpability necessary to sustain a substantive due process claim in a case such as this, we reverse.

I.    Background

The facts of this case are tragic. At approximately 3:00 a.m. on August 8, 1992, Mr. Radecki awoke to the sound of a woman screaming outside his bedroom window in Santa Fe, New Mexico. He looked out the window and heard more screaming and the sound of someone walking around outside. Shortly thereafter, Deputy Barela arrived nearby in a police car with lights flashing. Mr.

Radecki left his home, got in his car, and drove to the scene.

When Deputy Barela arrived on the scene, a motorcycle lay on the side of the road. Eric Trujillo drove up in a tow truck. Deputy Barela detected a man in the bushes, and with his flashlight recognized him as Daniel Martinez. Martinez staggered out of the bushes. Martinez, who appeared to be intoxicated, told Deputy Barela and Trujillo that his girlfriend had run him off the road, causing him to wreck. Deputy Barela began to look around the area for other vehicles or injured persons.

Mr. Radecki arrived in a robe carrying a flashlight. He told Deputy Barela that he lived nearby, and that he had heard screams, as if a woman were being raped. Deputy Barela and Radecki explored the scene with their flashlights, with Martinez close behind. When Deputy Barela shined his flashlight on a car in the bushes, Martinez tried to grab Deputy Barela's nine millimeter semiautomatic pistol. The two men wrestled for control of the gun. Deputy Barela yelled to Radecki, "Hit him with your flashlight. Hit him. Get him off me."

It is unclear whether Radecki hit Martinez with his flashlight. In response to Deputy Barela's command, however, Radecki approached the struggling pair. At that point, Martinez wrested the gun away from Deputy Barela, who then fled to the bushes. Martinez turned and shot Radecki in the chest, killing him.

Plaintiffs brought suit against Deputy Barela under 42 U.S.C. § 1983. They

alleged that he violated Mr. Radecki's substantive due process rights under the Fourteenth Amendment. They specifically asserted that Deputy Barela violated the Constitution by increasing Radecki's vulnerability to harm by a third party when Deputy Barela ordered Radecki to intervene in the struggle over the gun, surrendered the gun to Martinez, and ran and hid in the bushes when Martinez gained control of the gun. In the early stages of this case, Deputy Barela moved unsuccessfully for summary judgment based on qualified immunity.

Qualified immunity protects government officials from individual liability in a section 1983 action unless the officials violated clearly established constitutional rights. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). When a defendant pleads qualified immunity, the plaintiff must then make a two-part showing. See Albright v. Rodriguez, 51 F.3d 1531, 1534 (10th Cir. 1995). "First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right." Id. "Second, the plaintiff must show that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." Id.

We previously entertained Deputy Barela's appeal from the denial of his motion for summary judgment on grounds of qualified immunity. See Radecki v. Barela, 77 F.3d 493 (10th Cir. 1996) (unpublished table decision). In that decision, we remanded so that the district court could consider whether Plaintiffs

had alleged conduct amounting to a constitutional violation in light of our decision in Uhlrig v. Harder, 64 F.3d 567 (10th Cir. 1995), cert. denied, 516 U.S. 1118 (1996). In Uhlrig, we held that in order for a plaintiff to prevail on a substantive due process claim against an individual police officer, she must demonstrate that the officer acted in a manner that "shocks the conscience." Id. at 571. Upon remand, the district court held that Plaintiffs did allege facts that Deputy Barela's conduct shocks the conscience. The district court further held that our decision in Medina v. City and County of Denver, 960 F.2d 1493 (10th Cir. 1992), clearly established that Deputy Barela's conduct was unconstitutional. Thus, the district court again denied qualified immunity to Deputy Barela. Deputy Barela again appeals.

II.    Standard of Review

"We review the district court's denial of qualified immunity on summary judgment de novo." Romero v. Fay, 45 F.3d 1472, 1475 (10th Cir. 1995). As with other summary judgment appeals, we review the evidence in the light most favorable to the nonmoving party. See id. When we review summary judgment decisions involving a qualified immunity defense, however, our review is somewhat different than other summary judgment rulings. We follow the analytical framework that the Supreme Court established in Siegert v. Gilley, 500 U.S. 226, 231-33 (1991). See Romero, 45 F.3d at 1475.

Siegert established that a district court's first task in evaluating a defendant's assertion of qualified immunity is to determine whether the plaintiff has alleged the violation of a constitutional right at all. See id. at 231-32; Romero, 45 F.3d at 1475. "Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question." County of Sacramento v. Lewis, — S. Ct. at —, 1998 WL 259980, at *4 n.5. Whether a plaintiff has alleged conduct by a defendant that violates the Constitution and whether that prior law clearly prohibited the defendant's conduct are questions of law that we review de novo. See Romero, 45 F.3d at 1475.

III.    Discussion

Section one of the Civil Rights Act of 1871, 42 U.S.C. § 1983, provides a remedy against any person who, under color of state law, deprives another of rights protected by the Constitution. See Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992). Plaintiffs' section 1983 claim rests on the Due Process Clause of the Fourteenth Amendment, which states: "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Plaintiffs do not assert that Deputy Barela violated the procedural component of the Clause; rather, they rely on its substantive component "that protects individual liberty against 'certain government actions

regardless of the fairness of the procedures used to implement them.'" Collins, 503 U.S. at 125 (citing Daniels v. Williams, 474 U.S. 327, 331 (1986)). Plaintiffs specifically assert that Deputy Barela violated the Constitution by creating the danger that resulted in Radecki's death. In accordance with the Siegert framework, we must first determine whether, viewing the evidence in the light most favorable to the plaintiff, Deputy Barela committed a constitutional violation.

In Uhlrig, this Circuit articulated the standard for judging whether a governmental officer's actions violate the substantive component of the Due Process Clause. See Uhlrig, 64 F.3d at 573. Relying on the Supreme Court's enunciation of the standard in Collins, in which the Supreme Court equated arbitrary state conduct with state conduct that "shocks the conscience," we made clear that in order to prevail on a substantive due process claim such as the one asserted here, the plaintiff must demonstrate that the defendant acted in a manner that shocks the conscience. Id. (citing Collins, 503 U.S. at 126). We were compelled to acknowledge in Uhlrig, however, that the level of culpability that must be shown under the "shocks the conscience" standard is difficult to define. In an effort to guide our analysis of whether particular conduct "shocks the conscience," we emphasized the importance of three basic principles highlighted by the Supreme Court in evaluating substantive due process claims: "(1) the need

for restraint in defining their scope, (2) the concern that § 1983 not replace state tort law, and (3) the need for deference to local policymaking bodies in making decisions impacting upon public safety." Uhlrig, 64 F.3d at 573 (citations omitted). In a case decided this term, the Supreme Court has relied on these three basic principles and clarified the degree of culpability required to meet the conscience-shocking standard. See County of Sacramento v. Lewis, — S. Ct. —, 1998 WL 259980 (U.S. May 26, 1998). That decision controls this case.

Lewis addressed whether a police officer engages in conduct that shocks the conscience, thereby violating substantive due process, "by causing death through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender." Lewis, — S. Ct. at —, 1998 WL 259980, at *2. In Lewis, the defendant officer, driving a patrol car, pursued a motorcycle through a residential neighborhood for 75 seconds at speeds up to 100 miles per hour, covering a distance of 1.3 miles. The only violation that the motorcyclist apparently had committed was driving at a high rate of speed. The chase ended after the motorcycle fell over while turning. The patrol car struck the motorcycle passenger, killing him. The victim's family brought a section 1983 claim against the officer, the county, and the sheriff's office, alleging a substantive due process deprivation. The Ninth Circuit held that the degree of fault necessary to state a constitutional claim in high-speed police chases is

deliberate indifference to, or reckless disregard for, another's right to life and personal security. See Lewis v. County of Sacramento, 98 F.3d 434, 441 (9th Cir. 1996). The Supreme Court unanimously rejected the Ninth Circuit's use of the deliberate indifference standard in the context of high-speed chases, holding that under the circumstances presented "only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." Lewis, — S. Ct. at —, 1998 WL 259980, at *2.

It is important to be precise about the conduct that is at issue in this case and why Lewis controls it. In Lewis, the defendant officer himself inflicted the harm on the victim. In this case, the harm to Mr. Radecki was ultimately caused by a private third party (Martinez). Nevertheless, the conduct complained of was that of Deputy Barela, and the pivotal question is whether the officer's conduct resulted in a constitutional deprivation. Our analysis does not change simply because a private third party inflicted the harm.

It is true, of course, that "state actors are generally only liable under the Due Process Clause for their own acts and not private violence." Uhlrig, 64 F.3d at 572. There are, however, two exceptions to that rule. First, the state may be subject to constitutional liability if it does not perform a duty to provide protection to an individual with whom the state has a special relationship because

it has assumed control over that individual, such as in a prison. See id. at 572. Second, the state may be constitutionally liable if it creates a danger that results in harm to an individual, even if that harm is ultimately inflicted by a private party. See id. The "shocks the conscience" standard applies to both types of suits. See id. at 572-73.

Plaintiffs here seek recovery under a "danger creation" theory. They contend that the constitutional violation arose from Deputy Barela's decision to involve a bystander, Radecki, in the dangerous struggle for the gun, and then to abandon him once Martinez had gained control of the firearm. Lewis speaks directly to the degree of culpability required to shock the conscience under these circumstances.

The Supreme Court in Lewis builds upon the three principles that we articulated in Uhlrig and translates them into a sound framework, grounded in common sense, for analyzing those myriad situations involving law enforcement and governmental workers deployed in emergency situations. Lewis rejects again any tendency to equate constitutional liability with tort liability. More importantly, however, the Lewis opinion underscores the need for deference to local officials making decisions in emergency situations. The Court first reiterates the important principle that rejects "the lowest common denominator of customary tort liability as any mark of sufficiently shocking conduct" and holds

"that the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." Lewis, — S. Ct. at —, 1998 WL 259980, at *7. The Court then observes that conscience-shocking behavior is most likely to be found "at the other end of the culpability spectrum"—that is, where there is an intent to do harm that is not justified by any government interest. Id. The Court next specifically recognizes that in the middle range of the culpability spectrum, where the conduct is more than negligent but less than intentional, there may be some conduct that is egregious enough to state a substantive due process claim. See id. at *8. Within this middle range, Lewis directs us to analyze the level of culpability by examining the circumstances that surround the conduct at issue and the governmental interest at stake.

Instead of defining conscience-shocking conduct by expounding on the meaning of "arbitrary" conduct, as Collins directs (and as the district court did), Lewis points our inquiry to the official's opportunity for deliberation and in doing so draws important analogies to the Eighth Amendment prison context. See id. at **8-9 (citing, among others, Whitley v. Albers, 475 U.S. 312 (1986); City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239 (1983); and Estelle v. Gamble, 429 U.S. 97 (1976)). Attention to the marked differences between, for instance, a normal custodial situation in a prison and a violent disturbance in a prison "shows

why the deliberate indifference that shocks in the one case is less egregious in the other." Id. at *8. We are directed to employ the "deliberate indifference" standard only when actual deliberation is practical. Id. In the custodial situation of a prison, actual deliberation is not only possible but required in those matters that affect an inmate's general well-being, such as medical care, proper exercise, and adequate nutrition. These are matters about which public officials must make policy decisions with careful attention to their special relationship to those in custody—and about which they have the luxury of prolonged consideration. Lewis contrasts those deliberative policy judgments with decisions that prison officials must make during a riot. Deliberate indifference does not suffice for constitutional liability under the Eighth Amendment "when a prisoner's claim arises not from normal custody but from response to a violent disturbance." Id. at *9.

The Court directly analogizes the level of culpability required for an Eighth Amendment violation in the prison context to the level required for substantive due process liability, instructing that the analysis rests upon:

> the luxury enjoyed by prison officials of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations. When such extended opportunities to do better are teamed with protracted failure even to care, indifference is truly shocking. But when unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates "the large concerns of the governors and the

governed."

Id. at *7 (quoting Daniels v. Williams, 474 U.S. 327, 332 (1986)). Lewis specifically analogizes a prison official's response in a riot situation to a police officer's conduct in a high speed chase. Both situations require the officer's instant judgment, and accordingly, no substantive due process claim can lie unless the defendant official's conduct was unjustified by any government interest and was "tainted by an improper or malicious motive." Id. at *11.

Therefore, in assessing the constitutionality of law enforcement actions, we now distinguish between emergency action and actions taken after opportunity for reflection. Appropriately, we are required to give great deference to the decisions that necessarily occur in emergency situations. In the many cases that involve "lawless behavior for which the police were not to blame," id., we are no longer obliged to try to give meaning to the word "arbitrary" as the district court tried to do.

Henceforth, we look to the nature of the official conduct on the spectrum of culpability that has tort liability at one end. On the opposite, far side of that spectrum is conduct in which the government official intended to cause harm and in which the state lacks any justifiable interest. In emergency situations, only conduct that reaches that far point will shock the conscience and result in constitutional liability. Where the state actor has the luxury to truly deliberate

about the decisions he or she is making, something less than unjustifiable intent to harm, such as calculated indifference, may suffice to shock the conscience.

Applying the standard thus enunciated in <u>Lewis</u>, the result in this case is clear. Deputy Barela was confronted with a suddenly explosive law enforcement situation when Martinez tried to seize Barela's gun with Radecki present. Deputy Barela had no time for deliberation. The undisputed facts in this record make clear that Deputy Barela was confronted with the kind of instantaneous judgment call that is so often required of law enforcement personnel, prison officials, and many other government actors called to emergency situations. Sometimes these decisions are negligent, sometimes they are even reckless, sometimes indifferent. Under these circumstances, however, where Plaintiffs have not even alleged that Deputy Barela acted with an intent to harm the participants or to worsen their legal plight, under the <u>Lewis</u> standard there is no constitutional liability.

As the Supreme Court found in <u>Lewis</u>, regardless of whether Deputy Barela's behavior "offended the reasonableness held up by tort law or the balance struck in law enforcement's own codes of sound practice, it does not shock the conscience, and petitioners are not called upon to answer for it under § 1983." <u>Lewis</u>, — S. Ct. at —, 1998 WL 259980, at *11. There being no constitutional violation, the plaintiffs cannot sustain the first of the two-part showing required to rebut the defendant's assertion of qualified immunity.

The order denying summary judgment is reversed and the case is remanded for entry of judgment in favor of the defendants.