52 F.Supp.2d 1090 (1999)
Jennifer NEAL, et al., Plaintiffs,
v.
ST. LOUIS COUNTY, et al., Defendants.
No. 4:98CV195 RWS.
United States District Court, E.D. Missouri, Eastern Division.
June 9, 1999.
*1091 Harold L. Whitfield, Whitfield and Associates, Kirkwood, MO, for plaintiffs.
Christopher J. McCarthy, St. Louis County Counselor's Office, Clayton, MO, for defendants.

MEMORANDUM AND ORDER
SIPPEL, District Judge.
This matter is before the Court on Defendants' Motions for Summary Judgment. The motions are directed at Counts I and II brought by the personal representative of the estate of Officer Willie Neal, Jr. ("Officer Neal").[1] These Counts arise under 42 U.S.C. § 1983 based on alleged violations of the Fourth and Fourteenth Amendments to the United States Constitution. The motions for summary judgment will be granted because the Defendants did not violate the constitutional rights of Officer Neal.

Background
The following facts are undisputed.[2] Officer Neal was an undercover police officer for the St. Louis County Police Department Drug Task Force. On January 29, 1997, Officer Neal was accompanied by Officer Carl Peterson ("Peterson") to make an undercover "drug buy." Officer Neal and Officer Peterson drove to a liquor store on Natural Bridge Road in the City of St. Louis. Within minutes of arriving at the liquor store, a person, later identified as Jerome Baker ("Baker"), approached the officers' car. Officer Neal exited the car and walked with Baker to the southwest corner of the liquor store where they stopped but continued to talk. After a brief conversation, Officer Neal and Baker walked behind the building.
Officer Peterson exited the car and walked to a position where he could see around the corner of the building. Approximately *1092 twenty to thirty feet away Peterson saw Baker pointing a gun at Officer Neal's head. Officer Neal was starting to lie down on the ground. Officer Peterson waited for Officer Neal to lay completely on the ground. Baker continued to point his gun at Officer Neal's head. Officer Peterson announced that he was a police officer and ordered Baker to stop and put his gun down. Upon hearing Officer Peterson, Baker whirled and started firing at Officer Peterson. Officer Peterson fired two shots at Baker in order to defend himself and Officer Neal. Officer Peterson moved to his left as Baker fired four more shots at Officer Peterson. Officer Peterson did not fire any more shots. Baker fled the scene. Officer Neal was shot during the exchange of gun fire. At the scene, Officer Peterson did not know that he had fired the bullet that struck Officer Neal. Officer Neal died of this single bullet wound. Officer Peterson did not shoot at Officer Neal. Officer Peterson did not intend to harm Officer Neal or to worsen his legal plight.
In Count I the Estate alleges that Officer Peterson's actions were the result of recklessness, deliberate indifference, conscious disregard, and an excessive use of force which deprived Officer Neal of his rights under the Fourth and Fourteenth Amendments. Count II asserts that the County of St. Louis, Ronald Battelle (Chief of the St. Louis County Police Department), Robert Flagg, Gene Warmann, Patrick Twardowski, Sheila Hoffmeister, and Leon Burke (members of the Board of Police Commissioners of St. Louis County) showed conscious disregard and deliberate indifference to the safety of police officers, through the policies, customs, and practices of the drug task force that caused the death of Officer Neal in violation of his rights under the Fourth and Fourteenth Amendments. Counts I and II arise under 42 U.S.C. § 1983.

Summary Judgment
Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center-West, 160 F.3d 484, 486 (8th Cir.1998)(citing Fed. R.Civ.P. 56(c)). The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, or citation to the pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324, 106 S.Ct. 2548.

Discussion

I. Fourth Amendment Claim Against Officer Peterson[3]
Plaintiff Estate asserts a Fourth Amendment claim. The Fourth Amendment applies to state actors by virtue of the Fourteenth Amendment. The Fourth Amendment covers only searches and seizures. County of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct. 1708, 1715, 140 L.Ed.2d 1043 (1998). The Estate has not alleged that an illegal search occurred. The question before the Court is whether the unintentional shooting of Officer Neal by Officer Peterson constitutes an illegal seizure under the Fourth Amendment.
A Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement. Brower v. *1093 County of Inyo, 489 U.S. 593, 596, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989). A Fourth Amendment seizure occurs only when there is a "governmental termination of movement through means intentionally applied." Id. at 597, 109 S.Ct. 1378. The government's intent to terminate the movement of an individual must be specific to that individual, and the means used must be intentionally applied toward that individual. See Id. Therefore, a Fourth Amendment seizure is not found when an innocent bystander is injured by police chasing a fleeing felon or when pursued felons are stopped by police in an unintended car crash. See Lewis, 118 S.Ct. at 1715.
The undisputed facts in the present case are that Officer Peterson did not intentionally apply any force to Officer Neal. Officer Peterson did not intend to shoot at Officer Neal or to hit him with the two shots fired at Baker. Because Officer Peterson did not intentionally apply any force against Officer Neal, Officer Peterson did not seize Officer Neal in violation of his Fourth Amendment rights. Summary judgment will be granted on this claim.

II. Fourteenth Amendment Claim Against Officer Peterson
Although not expressly stated in the First Amended Complaint, Plaintiffs' memorandum in opposition to summary judgment clarifies that the Estate also asserts a Fourteenth Amendment substantive due process claim.
Plaintiff Estate alleges that Officer Neal's substantive due process rights were violated by Officer Peterson because he acted with deliberate indifference during the course of events leading up to the drug buy which resulted in the shooting of Officer Neal.
The overarching fundamental issue in this case is whether an allegation of deliberate indifference or recklessness can be the basis of a substantive due process violation when a police officer fired his weapon at a suspect and inadvertently struck and killed a fellow officer.

A. The Fourteenth Amendment
The Due Process Clause of the Fourteenth Amendment provides "[n]or shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV. The touchstone of due process is the protection of the individual against the arbitrary action of government, which includes the exercise of power without any reasonable justification in the service of a legitimate governmental objective. Id. at 1716 (quotations and citations omitted). Only the most egregious official conduct can be said to be arbitrary in the constitutional sense. Id.

B. Substantive due process claims under the Fourteenth Amendment
In County of Sacramento v. Lewis, the Supreme Court reviewed what official conduct may form the basis of a substantive due process violation. The case involved a § 1983 substantive due process claim of a motorcycle passenger who was killed when struck by a police car during a high-speed chase. The Court found that a substantive due process violation could only occur if a police officer's actions involved "an abuse of executive power so clearly unjustified by any legitimate objective of law enforcement as to be barred by the Fourteenth Amendment." Id. at 1713. The Court reiterated that in order to find a violation of a citizen's substantive due process rights, governmental action must shock the conscience. Id. at 1718. The shock the conscience test is most likely met when a government actor has an intent to harm which is unjustified by any governmental interest. Id. While governmental conduct which is deliberately indifferent will not generally "shock the conscience", it may in some instances. Id. Therefore, whether the standard of conduct employed by a governmental actor shocks the conscience for purposes of a substantive due process violation must be determined in light of the circumstances of each case. Id.
*1094 In Lewis, the Court's analysis contrasted the government's conduct as the custodian of jailed prisoners with the conduct of police officers in high-speed chases as an illustration of how the unique circumstances of each case determine whether the conduct can be the basis of a substantive due process claim. Specifically, the Court described how deliberate indifference which may shock the conscience in one situation fails to do so in another. Id. at 1719. The Court stated that the deliberate indifference standard is appropriate in most prisoner civil rights cases because actual deliberation by prison officials is possible and practical under normal prison conditions. Id.
Even in the prison setting, however, the deliberate indifference standard is not always appropriate. Id. at 1720. For example, the standard of liability for prison officials' actions during a riot is not based on deliberate indifference but rather is based on whether the force used during the riot was applied in a good faith effort to maintain or restore discipline or applied maliciously and sadistically for the very purpose of inflicting harm. Id. (citing Whitley v. Albers, 475 U.S. 312, 320, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)).
Like prison officials during a riot, police officers are faced with situations in which they must act decisively to restore and maintain lawful order while at the same time they are called upon to show restraint in the methods they choose to do their job. Id. At times a police officer must make decisions in haste, under pressure, and frequently without the luxury of a second chance. Police officers are forced to make split-second decisions in circumstances that are tense, uncertain and rapidly evolving. Id. (quotations and citations omitted). Actual deliberation is not practical in these situations. Therefore, the use of the deliberate indifference standard as the basis for due process violations in these situations is not appropriate. Id.
The luxury of time and the opportunity to deliberate and weigh competing interests before choosing a course of action is not present when police officers are asked to make quick decisions in the course of their duty. The Supreme Court in Lewis reasoned that "when unforeseen circumstances demand a [police] officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose" to raise to the officer's action to a level which shocks the conscious. Id. at 1720. (emphasis added). In such cases only conduct motivated by a purpose to cause harm unrelated to the legitimate objective of the government action will rise to the level of a substantive due process violation. Id.
Courts should be careful not to indulge in armchair quarterbacking or imposing the benefits of hindsight when evaluating police officers' use of deadly force. It may appear, in the calm aftermath, that an officer could have taken a different course, but such a demanding standard is not required by the Constitution. See Cole v. Bone, 993 F.2d 1328, 1334 (8th Cir.1993).

C. Officer Neal's right to substantive due process was not violated
In the present case, Officer Peterson and Officer Neal were involved in an undercover drug buy. Officer Peterson observed a suspected drug dealer aiming a gun at Officer Neal's head after forcing him to the ground. Officer Peterson fired two shots at the drug dealer only after being fired upon. One of Officer Peterson's two shots struck and killed Officer Neal. A police officer's decision to use his weapon when fired upon by a suspected drug dealer requires the type of instant judgment described in Lewis.
Under such circumstances the Supreme Court's analysis in Lewis dictates that Officer Peterson cannot be liable for the harm to Officer Neal under the Fourteenth Amendment in the absence of an intent to cause physical harm to Officer Neal. That intent is clearly absent in this case.
*1095 Plaintiff Estate argues that the deliberate indifference standard should be used in this case to establish a violation of Officer Neal's substantive due process rights. The Estate alleges that Officer Peterson breached St. Louis County Police Department policies and practices that led up to the shooting which caused the death of Officer Neal[4]. The Estate asserts that because those breaches occurred before the confrontation with Baker, Officer Peterson had time to deliberate upon his actions and as a result, the deliberate indifference standard should apply. Police department guidelines, however, do not create constitutional rights which are implicated by the breach of such guidelines. See Mettler v. Whitledge, 165 F.3d 1197, 1203 (8th Cir.1999)(plaintiff's assertion that two deputies failed to follow sheriff department's guidelines by failing to wait for back-up and failing to use squad car to barricade suspect in garage or use other protective actions did not establish a constitutional violation). See also Lewis, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)(fact that officer violated department policy on high-speed chase was not used as a factor by the Court in deciding whether decedent's Fourteenth Amendment rights were violated). A substantive due process violation can only occur if a police officer's actions involve "an abuse of executive power so clearly unjustified by any legitimate objective of law enforcement as to be barred by the Fourteenth Amendment." Lewis, 118 S.Ct. at 1713.
The facts of the present case establish that Officer Peterson returned gun fire after being fired upon by Baker. It is undisputed that Officer Peterson never intended to harm Officer Neal or to worsen his legal plight.
The tragedy of this event does not alter the analysis that the exercise of an instantaneous judgment by a police officer under these circumstances resulting in the death of a fellow officer does not rise to the level of a substantive due process violation.
Therefore, the Court finds that summary judgment for Officer Peterson on this claim is appropriate.

III. Fourth and Fourteenth Amendment Claims Against St. Louis County, Chief Battelle, and the Police Board Members
In Count II, the Estate has alleged that St. Louis County, Chief Battelle, and the members of the police board violated § 1983 under a failure to train theory or a municipal custom and policy theory. These Defendants cannot be liable merely because a subordinate violated someone's constitutional rights. See City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)(respondeat superior or vicarious liability will not attach under § 1983). Rather, these Defendants can only be liable for a violation of Officer Neal's constitutional rights "if [they] directly participated in the constitutional violation, or if [their] failure to train or supervise the offending actor caused the deprivation." Otey v. Marshall, 121 F.3d 1150, 1155 (8th Cir.1997)(police chief not liable under failure to supervise theory where police officer shot and killed a by-stander). See also Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)(county only liable for § 1983 violation caused by county custom or policy).
In the present case Plaintiffs have not alleged that these defendants actually participated in the shooting that led to Officer Neal's death. Consequently, Plaintiffs must prove that the Defendants' custom or policies or failure to train or supervise Officer Peterson caused a deprivation of Officer Neal's constitutional rights. In order for a municipality to be held liable under § 1983, whether on a failure to train *1096 or a municipal custom or policy theory, there must first be a violation of the plaintiff's constitutional rights by the municipal employee (for whom the municipality is presumably liable). Abbott v. City of Crocker, 30 F.3d 994, 998 (8th Cir.1994). See also Olinger v. Larson, 134 F.3d 1362, 1367 (8th Cir.1998)(claims against the city based on its alleged inadequate training and supervision of must fail when court determined that police detective and police chief did not violate plaintiff's constitutional rights); Brodnicki v. City of Omaha, 75 F.3d 1261, 1266 (8th Cir.1996)(because police officers did not violate plaintiff's constitutional rights, it follows that plaintiff's claim against the city under a theory of inadequate training or municipal custom lacks merit); Schulz v. Long, 44 F.3d 643, 647 (8th Cir.1995)(where there is no underlying constitutional violation by police officers, district court correctly granted summary judgment on failure to train claim); and Friedman v. City of Overland, 935 F.Supp. 1015, 1018 (E.D.Mo.1996)(it is clearly established that a municipality cannot be held liable under § 1983, whether on a failure to train theory or a municipal custom and policy theory, unless the municipal/state employee is found liable on the underlying substantive constitutional claim).
Accordingly, under Eighth Circuit precedent, St. Louis County, Chief Battelle, and the members of the police board can only be liable under § 1983 if Officer Peterson violated the constitutional rights of Officer Neal. The Court has already determined that Officer Neal's constitutional rights were not violated by Officer Peterson. Consequently, St. Louis County, Chief Battelle, and the members of the police board cannot be liable to the Estate of Officer Neal under § 1983.
Plaintiffs cite Fagan v. City of Vineland, 22 F.3d 1283 (3rd Cir.1994) for the proposition that even if Officer Peterson did not violate Officer Neal's constitutional rights, the county, police chief, and the members of the police board may still be liable for § 1983 claims based on the deliberate indifference standard of liability. This proposition, however, is directly contrary to Eighth Circuit precedent.
Therefore, summary judgment will be granted on the Estate's claims against these Defendants.
Accordingly,
IT IS HEREBY ORDERED that Defendant Carl Peterson's Motion for Summary Judgment [# 40] is GRANTED.
IT IS FURTHER ORDERED that Defendants St. Louis County, Ronald Battelle, Robert Flagg, Gene Warmann, Patrick Twardowski, Sheila Hoffmeister, and Leon Burke's Motion for Summary Judgment [# 36] is GRANTED.
NOTES
[1] Counts III through XI were dismissed by the Court on March 26, 1999.
[2] The Plaintiffs note in their memorandum in opposition to summary judgment that they had not taken the deposition of Officer Peterson. Yet Plaintiffs have not filed affidavits or otherwise requested a continuance to take Officer Peterson's deposition in order to supplement their opposition to summary judgment. See Fed.R.Civ.P. 56(f). In fact Plaintiffs have informed the Court that "[t]he key disputed (and undisputed) facts are now fully briefed" and before the Court in the context of Defendants' motion for summary judgment. (Pls.' Mot. for Recons. of Order Dismissing Counts III through X of First Am. Compl.)
[3] In its memorandum in opposition to summary judgment, Plaintiff Estate did not address Officer Peterson's motion for summary judgment on the Fourth Amendment claim.
[4] Specifically Plaintiff alleges that Peterson: did not adequately plan the drug buy; had unauthorized bullets in his gun; allowed Officer Neal to go out of sight behind the building with Baker; failed to challenge Baker from a position of cover; and had "tunnel vision" at the instant he returned fire at Baker.