# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1687

_____

| | | |
|---|---|---|
| Dorothy I. Feist, individually, and as trustee for the heirs and next of kin of Brian Keith Feist, deceased, | * * * * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Bradley Jon Simonson, | * | |
| | * | |
| Defendant-Appellant, | * | |
| | * | |
| Kim Johnson; Robert Glasrud; Matthew Blade; City of Minneapolis, Minnesota; Craig Nordby, | * * * | |
| | * | |
| Defendants. | * | |
| _____ | * | |
| | * | |
| Solutions of the Tragedy of Police Pursuits, | * * | |
| | * | |
| Amicus on Behalf of Appellee. | * | |

_____

Submitted: February 16, 2000

Filed: July 25, 2000

_____

Before McMILLIAN, LAY, and JOHN R. GIBSON, Circuit Judges.
_____

LAY, Circuit Judge.

This is an appeal by Bradley Jon Simonson, a police officer for the Minneapolis Police Department, arising from his high-speed pursuit of a stolen automobile. Brian Feist was traveling eastbound on Interstate 94 near downtown Minneapolis and was killed when the pursued suspect's car crashed into him while traveling against traffic. Dorothy Feist brought this action against Simonson under 42 U.S.C. § 1983. The district court denied Simonson's motion for summary judgment on the ground of qualified immunity. This interlocutory appeal followed.[1]

The essential question in this case is whether Officer Simonson's conduct rises to the level of a due process deprivation under the Fourteenth Amendment. In evaluating whether a state officer enjoys the privilege of qualified immunity in the face of an alleged Fourteenth Amendment violation, the Supreme Court recently held in County of Sacramento v. Lewis, 523 U.S. 833, 847-48 n.8 (1998), that the "threshold

_____

[1]On March 19, 1999, Feist moved for dismissal of Simonson's appeal for lack of jurisdiction on the basis of Johnson v. Jones, 515 U.S. 304 (1995). Johnson holds that appellate courts lack jurisdiction to review a denial of summary judgment based on qualified immunity where the appellant seeks review only of the district court's determination that the evidence is sufficient to support a finding that particular conduct occurred. On April 22, 1999, an administrative panel from this court denied Feist's motion. In the present case, the facts leading up to the crash and Feist's death are essentially undisputed. As the issue of jurisdiction has been raised and ruled upon and we find the panel's decision in line with Johnson, the panel's ruling stands. See also Gainor v. Rogers, 973 F.2d 1379, 1382 (8th Cir. 1992) ("It is well settled that the denial of a summary judgment motion which asserts qualified immunity from suit is appealable 'to the extent that it turns on an issue of law.'") (quoting Mitchell v. Forsyth, 472 U.S. 511, 530 (1985)).

question" is whether the police officer's conduct is "so egregious, so outrageous" that it serves to "shock the contemporary conscience." Section 1983 does not provide a forum for litigation of state tort law–thus, if the conduct arises only to the level of negligence or recklessness, the federal forum stands foreclosed to those who seek reparation for damage.[2]

## I. Facts and Background

The Chase

---

[2]As stated in County of Sacramento v. Lewis, 523 U.S. 833, 848-49 (1998) (citations omitted):

> In Paul v. Davis, 424 U.S. 693, 701 (1976), . . . we explained that the Fourteenth Amendment is not a "font of tort law to be superimposed upon whatever systems may already be administered by the States," and in Daniels v. Williams, 474 U.S., at 332, we reaffirmed the point that "[o]ur Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." We have accordingly rejected the lowest common denominator of customary tort liability as any mark of sufficiently shocking conduct, and have held that the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process. It is, on the contrary, behavior at the other end of the culpability spectrum that would most probably support a substantive due process claim; conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level. See Daniels v. Williams, 474 U.S., at 331 ("Historically, this guarantee of due process has been applied to deliberate decisions of government officials to deprive a person of life, liberty, or property").

According to the record, on August 11, 1996, Simonson observed a black Ford Galaxy matching the description of a reportedly stolen vehicle traveling eastbound on Lake Street in Minneapolis. Simonson made a U-turn and followed the Galaxy. The driver, Darren Shannon, voluntarily pulled the vehicle over. At this point, Simonson had no reason to suspect the driver of anything other than the unauthorized use of a motor vehicle, which is a low-level felony. Simonson exited his squad car with his weapon drawn and ordered both the driver and the passenger to put their hands in the air. Neither individual complied. Simonson repeated the order two more times, after which the suspect yelled an expletive and quickly took off in the car. Simonson ran back to his cruiser, activated his lights and siren, and notified dispatch of the chase.

Simonson followed the Galaxy northbound on Park Avenue, then approximately eight blocks westbound on East 28th Street, which is a one-way going east. Shannon made several more turns and ran two stop signs and two stop lights in the process. Shannon eventually headed northbound on Portland Avenue, a one-way street running south, with Simonson still in pursuit. After two more turns, Shannon and Simonson drove onto the entrance ramp of eastbound Interstate 94. The cars proceeded down the interstate, and Shannon eventually crossed a grassy median on I-94 and exited the interstate via the southbound Hiawatha Avenue off-ramp. Simonson continued to give chase.

Shannon eventually turned around on Hiawatha and drove northbound in the southbound lanes. In so doing, Shannon passed Simonson on the driver's side of the squad car. Simonson then made a U-turn and witnessed Shannon re-enter eastbound I-94 through the Hiawatha exit ramp. Simonson, now joined by three other squads, followed Shannon down the off-ramp. At this point, Shannon, Simonson, and the three secondary squads were all driving westbound in the eastbound lanes. Simonson estimated Shannon's speed at around 70 miles per hour.

-4-

As the chase headed the wrong way down I-94, Simonson observed both Shannon and his passenger making obscene gestures at him through the windows of the Galaxy. Shannon was also weaving back and forth through the traffic lanes. Simonson shadowed Shannon's course on I-94, even following him the wrong way through a tunnel.[3]

During the chase, Feist drove eastbound on I-94 heading toward Shannon and the cruisers. Traffic slowed almost to a stop as Shannon and the officers continued their course. Feist swerved into the right shoulder to avoid rear-ending the car in front of him. Upon entering the shoulder, Feist's vehicle was immediately crushed by Shannon's vehicle, which was being pursued in the right-hand shoulder of I-94. The estimated closing speed of the two cars was 97 to 104 miles per hour (146.6 feet per

---

[3]As the district court noted, various law enforcement officers testified as to their opinions about the chase.

> Sgt. Johnson, the MPD pursuit instructor, testified that he would probably not have chased a stolen car the wrong direction down the interstate. He acknowledged that, in order to pursue a vehicle the wrong way on an interstate highway, a "very hazardous situation," the crime for which the vehicle is being pursued must be very serious. He admitted that, "you need a damn good reason to chase somebody into a highly dangerous traffic situation." Similarly, MPD Officer Alan Rathbun acknowledged that chasing a car the wrong way down the interstate "creates an unreasonable risk of danger to the public," and Chief Olson admitted that such a chase represents an "inherently dangerous activity." Chief Olson also testified that auto theft is "on the low end of the felony spectrum" and catching a car thief is "not worth taking a citizen's life."

(Mem. Op. and Order at 8-9 (citations omitted).) Furthermore, Sergeant Craig Nordby, the on-duty patrol supervisor monitoring the pursuit, testified at his deposition that he received no information from the pursuing officers regarding either the traffic level on eastbound I-94 or the number of squads involved in the pursuit.

second). Both Shannon and his passenger were injured, and Feist died on the scene. An accident reconstructionist found Feist free of any fault.

Approximately 1500 feet west of the point of impact stands the Lowry Hill tunnel. The Lowry Hill tunnel is noticeably longer than the tunnel through which Simonson pursued Shannon, and it is even more dangerous due to its narrow build and the existence of a blind curve within. Assuming a driving speed of 70 miles per hour, Shannon and the officers would have reached the tunnel traveling the wrong way within approximately fifteen seconds.

In all, the chase lasted over six minutes and spanned over six miles, 1.2 of which were in the wrong direction down I-94. The cars sped through residential areas, past the Minneapolis Institute of Arts and a nearby park, and onto the stretch of road intersecting I-94 and Interstate 35, the two primary throughways in Minneapolis/St. Paul.

Simonson's History

Simonson has a documented history of engaging in high-speed pursuits. He testified at his deposition that he may have been a party to over 100 such chases during his ten-year career with the Minneapolis Police Department. He was reportedly a party to twelve chases in one twenty-day period alone. Simonson admitted to his involvement in as many as twelve to fifteen chases in a single month. He has never terminated a chase voluntarily. His actions at the conclusion of a high-speed pursuit in 1990 led to two suits against him and the City of Minneapolis, which resulted in $555,000 in liability for the City. See Olson v. City of Minneapolis, Civ. No. 3-95-61; Mattson v. City of Minneapolis, Civ. No. 3-96-741.

The District Court's Opinion

-6-

The district court,[4] in a well-reasoned opinion, denied Simonson's motion for summary judgment and held the facts of this case were clearly distinguishable from Lewis. In Lewis, officers encountered a motorcycle being driven at a high rate of speed. Lewis was a passenger on the motorcycle. The driver refused to obey the officer's instruction to pull over, and a chase ensued. While attempting to make a sharp turn, the motorcycle tipped over and skidded to a halt. Lewis was struck by the officer's vehicle and pronounced dead at the scene of the accident. The Ninth Circuit applied the standard of deliberate indifference in determining whether the officer's conduct "shocked the conscience" for Fourteenth Amendment purposes. The appellate court reversed the district court's prior grant of summary judgment based on the officer's qualified immunity. See Lewis v. Sacramento County, 98 F.3d 434 (9th Cir. 1996).

The Supreme Court reversed the Ninth Circuit, holding that the chase did not violate the Fourteenth Amendment's requirement of due process because the officer's conduct did not shock the conscience. The Court viewed the officer's conduct as instinctive and spontaneous, and the Court recognized that decisions made during a high-speed pursuit are made "in haste, under pressure, and frequently without the luxury of a second chance." Lewis, 523 U.S. at 853 (quotation omitted). Reinstating the district court's dismissal, the Court held that where deliberation by the officer is not a possibility, "only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." Id. at 836. Thus, "high-speed chases with no intent to harm the suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983." Id. at 854.

---

[4]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota, presiding.

The intent standard for conscience shocking behavior is not always applied in high-speed chases resulting in an alleged due process violation, however. As the Court recognized, "[w]hether the point of the conscience shocking is reached when injuries are produced with culpability falling within the middle range, following from something more than negligence but less than intentional conduct, such as recklessness or gross negligence, is a matter for closer calls." Id. at 849 (quotation omitted). Some government acts falling within this spectrum may present an actionable Fourteenth Amendment claim. See id. In situations where an officer could have actually deliberated, courts are to apply the deliberate indifference standard to determine whether the behavior was conscience shocking. See id. at 851.

The district court viewed the facts of the present case and found that when Officer Simonson made the initial decision to pursue the stolen vehicle, the instantaneous judgment and reaction were fully justified. However, the district court pointed out that Simonson's instinctive decision to give chase slowly escalated into a high-speed chase involving wrong-way travel, thereby increasing the potential for harm to the general public. The district court observed:

> While Officer Simonson should be afforded deference for his initial decision, the contention that he did not have the time or ability to clearly assess the rising levels of potential danger in the situation should be subject to further analysis. At many points during the chase, Simonson had the opportunity to balance the law enforcement goal of apprehending Shannon for use of a stolen vehicle (a low-level penalty likely carrying no prison time) against the threat to the general public. Each new turn onto one-way streets and especially the accessing the freeway to drive on the wrong side of the median, presented a juncture for reassessment and evaluation of the escalating consequences of the chase. Rather than aborting the chase as the danger increased, the speed and number of pursuing vehicles also increased. . . . A review of Simonson's conduct, in light of Lewis and other established precedent, reveals that genuine

-8-

issues of fact exist as to whether his actions "shocked the conscience" for the purpose of a substantive due process claim.

(Mem. Op. and Order at 18-19 (emphasis added).) On this basis, the district court denied Simonson's motion for summary judgment.

## II. Discussion

We review a district court's denial of summary judgment de novo and apply the same standard as that which governed that court's decision. See Collins v. Bellinghausen, 153 F.3d 591, 595 (8th Cir. 1998). In determining whether an official is entitled to qualified immunity, this court undertakes a three-part inquiry. First, has the plaintiff alleged a violation of a constitutional right? Second, was the allegedly violated right clearly established at the time of its violation? Finally, would a reasonable official know or should the official have known that the actions at issue violated that right? See Foulks v. Cole County, 991 F.2d 454, 456 (8th Cir. 1993); Buckley v. Rogerson, 133 F.3d 1125, 1129 (8th Cir. 1998). If the plaintiff fails to adequately allege a constitutional violation, this court need not consider whether the law was clearly established or whether a reasonable officer would know or should have known that the alleged conduct infringed on the plaintiff's constitutional right.

Upon analyzing each element of qualified immunity as it applies to this case, we find Feist successfully alleged a constitutional violation, the law was clearly established at the time, and Simonson should have known his actions were constitutionally suspect. Thus, Simonson cannot invoke the protections of qualified immunity.

Constitutional Right

As an initial matter, we reject Feist's argument that the Lewis intent standard does not apply to innocent bystanders. A myriad of courts have applied Lewis in

situations where the plaintiff is an unsuspecting third party.[5] We therefore conclude that the <u>Lewis</u> intent standard applies regardless of whether a suspect or bystander is hurt.

<u>Lewis</u> makes it clear that an officer who unintentionally harms another while performing discretionary functions should be shielded from liability if the officer could not deliberate. On this basis, Simonson argues that it was error to deny him summary judgment because Feist offered no evidence of Simonson's intent to cause physical harm or worsen appellee's legal plight. We disagree with Simonson's analysis. Simonson's opportunity for deliberation takes this case outside of the "malicious and sadistic intent" standard articulated in <u>Lewis</u> and necessitates an inquiry into

_____

[5]<u>See generally</u> <u>Childress v. City of Arapaho</u>, 210 F.3d 1154, 1157-58 (10th Cir. 2000) ("The <u>Lewis</u> principles . . . apply whether the claimant is a police suspect or an innocent victim."); <u>Claybrook v. Birchwell</u>, 199 F.3d 350, 360 (6th Cir. 2000) (finding the "malicious or sadistic intent" standard of <u>Lewis</u> to apply to innocent third party harmed in police shoot-out); <u>Davis v. Township of Hillside</u>, 190 F.3d 167, 170 n.2 (3d Cir. 1999) (discussing and rejecting the argument that <u>Lewis</u> should not apply to third party harm); <u>Brown v. Nationsbank Corp.</u>, 188 F.3d 579, 592 (5th Cir. 1999) (applying <u>Lewis</u> to FBI operation that harmed innocent business-owners); <u>Onossian v. Block</u>, 175 F.3d 1169, 1171 (9th Cir. 1999) ("[I]f a police officer is justified in giving chase, that justification insulates the officer from constitutional attack, irrespective of who might be harmed or killed as a consequence of the chase."); <u>Schaefer v. Goch</u>, 153 F.3d 793, 798 (7th Cir. 1998) (applying <u>Lewis</u> where woman was shot during heated standoff between police and husband); <u>Radecki v. Barela</u>, 146 F.3d 1227, 1232 (10th Cir. 1998) (using <u>Lewis</u>' intent standard where innocent third party was killed during scuffle between officer and suspect); <u>Butera v. District of Columbia</u>, 83 F. Supp. 2d 15, 19 (D.D.C. 1999) (discussing the intent standard in the context of third party harm and choosing not to apply it only because the facts suggested an opportunity to deliberate); <u>Neal v. St. Louis County</u>, 52 F. Supp. 2d 1090, 1094 (E.D. Mo. 1999) (applying <u>Lewis</u> where third party officer was shot by another officer during drug bust); <u>Gillyard v. Stylios</u>, No. Civ.A. 97-6555, 1998 WL 966010, at *5 (E.D. Pa. Dec. 23, 1998) (utilizing <u>Lewis</u> intent standard where pedestrians were killed by collision involving two officers).

Simonson's deliberate indifference to Feist's civil rights. Because the deliberate indifference standard is more appropriately applied to these facts, Feist need not bring proof of Simonson's intent.

As the <u>Lewis</u> Court observed, the deliberate indifference standard is appropriately applied "only when actual deliberation is practical." <u>Lewis</u>, 523 U.S. at 851. Thus, "the critical question in determining the appropriate standard of culpability is whether the circumstances allowed the state actors time to fully consider the potential consequences of their conduct." <u>Moreland v. Las Vegas Metro. Police Dep't</u>, 159 F.3d 365, 373 (9th Cir. 1998). Because each case is fact-specific, it is difficult to analyze all post-<u>Lewis</u> cases to formulate judicial agreement to guide our review. Suffice it to say, we think <u>Lewis</u> is a sufficient beacon to affirm the findings of the district court. A brief discussion, however, of a few Fourteenth Amendment cases is nonetheless informative to our analysis.

In a landmark case which preceded <u>Lewis</u> by thirty-six years, three deputy sheriffs acting on a drug tip forcibly entered the plaintiff's bedroom and began inquiring about two morphine capsules sitting on the night stand. <u>See</u> <u>Rochin v. California</u>, 342 U.S. 165 (1952). The plaintiff swallowed the capsules and, after some struggle, was promptly taken to the hospital. At the direction of one of the officers, a physician pumped the plaintiff's stomach and he regurgitated the capsules. The Supreme Court found the officers' behavior conscience shocking. The forcible entry, the struggle to open the plaintiff's mouth and remove its contents, and the involuntary extraction of the capsules from his stomach were "methods too close to the rack and the screw to permit of constitutional differentiation." <u>Rochin</u>, 342 U.S. at 172. Similarly, in <u>Rogers v. City of Little Rock</u>, 152 F.3d 790 (8th Cir. 1998), this court found a due process violation when an on-duty patrol officer raped a woman after pulling her over for a minor traffic violation. This court characterized the officer's conduct as an "egregious . . . exercise of power without any legitimate governmental objective." <u>Rogers</u>, 152 F.3d at 797.

However, in <u>Radecki v. Barela</u>, 146 F.3d 1227 (10th Cir. 1998), the Tenth Circuit found no conscience shocking behavior on the part of an officer who took cover after a perpetrator wrestled away the officer's weapon. The suspect thereafter shot and killed a bystander who had helped separate the suspect and the officer at the officer's direction. In reversing the district court's denial of summary judgment for the officer, the court of appeals described the circumstances facing him as "a suddenly explosive law enforcement situation" necessitating an "instantaneous judgment call." <u>Radecki</u>, 146 F.3d at 1232. In another example, the district court in <u>Neal v. St. Louis County</u>, 52 F. Supp. 2d 1090 (E.D. Mo. 1999), granted summary judgment for an officer after finding no Fourteenth Amendment violation in the officer's actions during a drug bust gone awry. The defendant had found his partner on the ground with the suspect pointing a gun to his head. Upon hearing the defendant's order to drop the weapon, the suspect began firing shots. The defendant returned gunfire, and his partner was hit and killed by one of his bullets. In finding the defendant had not violated his partner's due process rights, the court explained that "[a] police officer's decision to use his weapon when fired upon by a suspected drug dealer requires the type of instant judgment described in <u>Lewis</u>." <u>Neal</u>, 52 F. Supp. 2d at 1094.

The case at bar falls somewhere between the extremes of <u>Rochin</u> and <u>Rogers</u> on the one hand and <u>Radecki</u> and <u>Neal</u> on the other. That said, while the facts of this case are of a different nature than those in <u>Rochin</u> and <u>Rogers</u>, the cumulation of events on August 11, 1996, leading to Feist's death create a factual issue as to whether Simonson had a fair opportunity to deliberate. The chase lasted over six miles, spanning both residential and commercial areas and passing a park and museum where pedestrians were sure to be found. Simonson followed Shannon the wrong way down three different roadways, all of which were known to carry a substantial amount of traffic. For 1.2 miles, Shannon and Simonson traveled in the wrong direction on I-94 near its intersection with I-35. This stretch of road is widely traveled, as it connects the two primary thoroughfares in the Twin Cities. At the time of the accident, Simonson had been on the force for eight years. We can assume he was familiar with the intersection

of I-94 and I-35 and was aware that it is notoriously busy. Despite this, he insisted on chasing Shannon the wrong way at high speeds, weaving in and out of traffic. Simonson went so far as to travel the wrong way through a tunnel on I-94, and he appeared ready to blast through another, more dangerous tunnel had the fatal accident not occurred. Throughout the chase, Simonson had no reason to suspect Shannon was guilty of anything other than the low-level felony of unauthorized use of a motor vehicle. As the Supreme Court noted in Lewis, "[a] police officer deciding whether to give chase must balance . . . the need to stop a suspect and show that flight from the law is no way to freedom, and . . . the high-speed threat to everyone within stopping range." Lewis, 523 U.S. at 853. Simonson had ample time to deliberate and weigh these considerations, and the evidence suggests he made a deliberative decision to continue the chase and to be indifferent to the dangers obviously inherent in his conduct.

As the district court pointed out, the chase may have begun as an incident requiring split second reactions. As time progressed, however, the chase graduated from one requiring heated responses to one allowing conscious deliberation. Indeed, Simonson was faced with "extended opportunities to do better," yet he exhibited "protracted failure even to care." Id. The deliberate indifference standard is properly applied, and a genuine issue of material fact exists as to whether Simonson was deliberately indifferent to Feist's Fourteenth Amendment rights.

Clearly Established Law

In order for a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Johnson-El v. Schoemehl, 878 F.2d 1043, 1048 (8th Cir. 1989) (quotation omitted). If the law at the time of the official action is not clearly established, we cannot hold the official responsible because he or she could not be expected to anticipate legal liability or recognize at the time that the conduct is

-13-

unlawful.  See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in light of pre-existing law the unlawfulness must be apparent."  Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citation omitted).  See also Johnson-El, 878 F.2d at 1049.

This court employs a flexible standard in determining whether a right is clearly established, requiring some factual correspondence with precedent and demanding that government officials respect general, well-established principles of law.  See J.H.H. v. O'Hara, 878 F.2d 240, 243 (8th Cir. 1989).  We look at the specific conduct about which the plaintiff complains while reviewing statutory and case precedent.  See J.H.H., 878 F.2d at 243.  "Whether the law is clearly established depends on what would be apparent in each situation."  Johnson-El, 878 F.2d at 1049.

Feist urges that at the time of the pursuit and collision, the law was well-established that officers could be held liable for their behavior during a high-speed chase.  We agree.  This circuit and others addressed the possibility of substantive due process violations in connection with police pursuits well before August 11, 1996.  See Roach v. City of Fredericktown, 882 F.2d 294, 297 (8th Cir. 1989); Evans v. Avery, 100 F.3d 1033, 1038 (1st Cir. 1996); Webber v. Mefford, 43 F.3d 1340, 1344 (10th Cir. 1994); Fagan v. City of Vineland, 22 F.3d 1296, 1308-09 (3d Cir. 1994); Temkin v. Frederick County Comm'rs, 945 F.2d 716, 723 (4th Cir. 1991); Checki v. Webb, 785 F.2d 534, 538 (5th Cir. 1986).  Although more frequently than not officers escaped liability in these cases, the potential for liability nonetheless existed.  Hence, the law was clearly established at the time of its alleged violation.[6]

_____

[6]Simonson argues that his conduct during the chase was legal and in conformance with Minnesota Statute § 169.03(3), which regulates emergency vehicles.  Section 169.03(3) states:  "The driver of any authorized emergency vehicle, when responding to any emergency call, may enter against the run of traffic on any one-way

Reasonable Officer Would Recognize Violation

Once it has been established that the alleged constitutional violation is supported by clearly established law, a qualified immunity defense will ordinarily fail, since a reasonable government actor should or would have known the law governing his conduct was a constitutional principle supported by clearly established law. See Buckley, 133 F.3d at 1131 (citing Harlow, 457 U.S. at 818-19). It is reliance on the objective reasonableness of the officer's conduct which serves to measure the officer's liability in instances of excessive disruption by the government. Only under extraordinary circumstances where it is shown that the officer neither knew nor should have known that the challenged actions violated a constitutional right may an officer be entitled to immunity. See id. (citing Harlow, 457 U.S. at 819). Simonson can make no such showing. In fact, Simonson testified at his deposition that he is aware of the critical aspects of the Fourteenth Amendment and its specific limitations on police activity. He admitted there was a "reasonable probability" that an accident would result from the August 11 chase, and he understood that innocent bystanders injured in a pursuit may claim they were denied their Fourteenth Amendment rights.

Given the case law precedent existing at the time of the accident and Simonson's own admissions, we find that a reasonable officer in Simonson's position would know or should have known as a matter of law that his actions potentially violated the

---

street, or highway where there is authorized division of traffic, to facilitate traveling to the area in which an emergency has been reported." Minn. Stat. § 169.03(3) (1996). We reject Simonson's argument. As the Minnesota Supreme Court noted in Pletan v. Gaines, 494 N.W.2d 38, 41 n.2 (Minn. 1992), the Motor Vehicle Code does not address whether a pursuit should have been discontinued at some point after being undertaken. It simply addresses the manner in which a police car can be driven in response to emergencies.

Fourteenth Amendment.  As such, the district court's dismissal of Simonson's motion for summary judgment on the ground of qualified immunity was appropriate.

### III.  Conclusion

The cumulation of events occurring on August 11, 1996, convinces this court that this case is properly analyzed under the deliberate indifference standard of conscience shocking behavior.  Feist successfully alleged a violation of a constitutional right, the law regarding due process violations in police chases was clearly established, and a reasonable officer would or should have known Simonson's conduct potentially violated Feist's rights.  Therefore, qualified immunity is improper, and we AFFIRM the district court's denial of Simonson's motion for summary judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.