**UNITED STATES COURT OF APPEALS**
**Tenth Circuit**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80294**
**(303) 844-3157**

Patrick J. Fisher, Jr.                                                                    Elisabeth A. Shumaker
        Clerk                                                                              Chief Deputy Clerk

December 22, 1999


**TO:**   ALL RECIPIENTS OF THE OPINION

**RE:**   Nos. 97-7099, 97-7101 & 97-7103, *Johnson, et al. v. Martin, et al.*
          Filed on November 1, 1999


The slip opinion filed on November 1, 1999 should include the name of counsel for appellee Lila B. Johnson. Page two of the slip opinion, the attorney section, is corrected to include the following:

Caesar C. Latimer, Tulsa, Oklahoma, for Appellee Lila B. Johnson.

A corrected copy of page two is attached.

                                                    Sincerely,
                                                    Patrick Fisher, Clerk of Court

                                                    By:    Keith Nelson
                                                           Deputy Clerk

**F I L E D**
United States Court of Appeals
Tenth Circuit

**NOV 1 1999**

**PATRICK FISHER**
Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LILA B. JOHNSON; LORETTA
CHAPLIN HARDRIDGE; NATALIE R.
HENRY; SHAWN JORDAN; JOYCE L.
JACKSON; CAROLYN EMBRY;
VANELLA C. TAYLOR; and LENNORE
ZACHARY, on behalf of themselves and
on behalf of other similarly situated,

      Plaintiffs - Appellees,

v.

JAMES MARTIN, Former Director of
Building Codes & Inspectors, in his
individual and official capacities; JOHN
WILLIAMSON, former Personnel
Director, in his official and individual
capacities; GARRY GARVIN, current
Assistant planner, in his official and
individual capacities,

      Defendants-Appellants,

CITY OF MUSKOGEE, a municipal
corporation.

      Defendant.

Nos. 97-7099
97-7101
97-7103

**Appeal from the United States District Court
for the Eastern District of Oklahoma
(D.C. No. 96-CV-536-B)**

Timothy D. Eisel (Jim T. Priest with him on the briefs), McKinney, Stringer and Webster,

P.C., Oklahoma City, Oklahoma, for Appellant James Martin.

Betty Outhier Williams (Jan Marie Cunningham with her on the brief), Gage and Williams Law Firm, Muskogee, Oklahoma, for Appellants Garry Garvin and John Williamson.

John Mack Butler (David R. Blades with him on the briefs), John Mack Butler & Associates, Tulsa, Oklahoma, for Appellees.

Caesar C. Latimer, Tulsa, Oklahoma, for Appellee Lila B. Johnson.

---

Before **HENRY**, **McKAY**, and **BRISCOE**, Circuit Judges.

---

**HENRY**, Circuit Judge.

---

James Martin, Gary Garvin, and John Williamson, current and former city officials for the City of Muskogee, Oklahoma, seek to appeal the district court's interlocutory order denying their motions for summary judgment. The plaintiff-appellees, all citizens of Muskogee, alleged that, while acting as the Director of the Building Codes and Enforcement Department of the City of Muskogee, the defendant James Martin violated their rights under the Equal Protection Clause of the Fourteenth Amendment by sexually harassing them over an extended period of time (from 1982 until 1996). The plaintiffs further alleged that the defendant Garry Garvin (the Assistant City Planner for the City of Muskogee) and the defendant John Williamson (the City's Personnel Director from 1977 until 1996) violated their rights under the Equal Protection Clause by failing to take adequate remedial action after they became aware of Mr. Martin's sexually harassing conduct. Messrs. Martin, Garvin, and Williamson argued unsuccessfully to the district

2

court that they were entitled to qualified immunity on these claims.

We first conclude that we have jurisdiction over these appeals. On the merits, we conclude that, during the period at issue, it was clearly established that a public official could be held liable under the Equal Protection Clause for sexually harassing a private citizen. Finally, accepting the plaintiffs' allegations as true, we conclude that a reasonable factfinder could determine that Mr. Garvin and Mr. Williamson could be held liable as supervisors for Mr. Martin's conduct. Thus, the district court properly denied the defendants' motions for summary judgment.

## II. BACKGROUND

In their complaint and in deposition testimony and statements submitted to the district court, the plaintiffs alleged that, beginning in 1982 and continuing until January 1996, Mr. Martin used his position as Director of the City of Muskogee's Building Codes and Enforcement Department to commit various acts of sexual harassment. Mr. Martin's position with the City vested him with the authority to certify that various construction projects complied with municipal building codes. Although the plaintiffs' allegations differ in many details, most involve attempts by Mr. Martin to obtain sexual favors in exchange for favorable consideration of permit applications and favorable determinations of compliance with city codes.

As summarized by the district court, see Garvin and Williamsons' App. vol. III, at

3

1247-55, the plaintiffs advanced the following allegations against Mr. Martin:

Carolyn Embry. Ms. Embry alleged that she has known Mr. Martin since sometime between 1979 and 1982. She stated that Mr. Martin repeatedly made sexual comments to her and engaged in unwelcome touching. She maintained that these contacts occurred between 1982 and 1996 and that they occurred in Mr. Martin's office, at various properties that he was inspecting, and at her home. She asserts that Mr. Martin had authority over building permits that she needed for her hair salon business.

Vanella Taylor. Ms. Taylor alleged that, in March 1992, when she was attempting to convert her home into a daycare center, Mr. Martin came to her home and made sexual remarks. She maintained that Mr. Martin continued to visit her home and business and that, when Ms. Taylor's husband purchased a new home in October 1994, Mr. Martin solicited her to meet him there. According to Ms. Taylor, the last time Mr Martin visited her was in December of 1995, when he came to the daycare center.

Joyce Jackson. Ms. Jackson alleged that she met Mr. Martin in April 1993 when she needed city approval for construction on her home. She said that Mr. Martin asked her personal questions, made comments of a sexual nature, told her that he could do something to help her, and then requested sexual favors. On one occasion, she asserted, Mr. Martin attempted forcible sex. She said that these incidents occurred until late 1994.

Shawn Jordan. Ms. Jordan alleged that Mr. Martin came to her home in April 1994 in order to inspect some electrical work. He gave her estimates of repair costs, and

4

when she asked him why the repair estimate was so high, he propositioned her for sexual favors in exchange for a lower estimate. Later, when the electrical repairs were being made, he appeared at her house and looked under her nightgown. During a final inspection, Ms. Jordan maintained, Mr. Martin came to her house and touched her in a sexual manner. Finally, in February 1995, he appeared at her house again, making sexual references and commenting on her pregnancy.

Loretta Champlin Hardrige. Ms. Hardridge alleged that Mr. Martin came to her home in September 1994, when it was being repaired. He identified himself as the city inspector and, during the inspection, asked her to meet him in a motel room. He allegedly told her that she could have a difficult time passing the inspections. About one week later, Mr. Martin saw her in his office, and he asked her if she "had decided." Garvin and Williamson's App. vol II, at 839. In late September or early October of 1994, he allegedly made sexual remarks to her and threatened to find her business in violation of municipal codes. She asserted that Mr. Martin touched her in a sexual manner and continued to harass her through January 1996.

Natalie R. Henry. Ms. Henry alleged that Mr. Martin came to her home in February 1995 to inspect a smoke alarm. While touching her, he told her that he could take care of everything she needed in order to open a day care center. When she rebuked him, he told her to meet him wearing a gown.

Lennore Zachary. Ms. Zachary alleged that she first met Mr. Martin when he

5

appeared at some property owned by her and her mother. Mr. Martin made comments about her appearance. In June 1995, Ms. Zachary explained, she sought to open a facility for juvenile delinquents. She alleged that Mr. Martin stated to her that problems with the facility could be avoided if she would be nicer to him. He then offered money in exchange for sex. In the fall of 1995, Mr. Martin visited her home and told her that she needed a certificate for the house. She stated that he forced his way into the house and that he made sexual comments to her and requested sexual acts from her.

Lila Johnson. Ms. Johnson alleged that Mr. Martin came to her house on January 18, 1996, identified himself as the City Code inspector, told her that he would need to inspect her property, and began hugging and touching her in a sexual manner. On the following day, Ms. Johnson alleged, Mr. Martin called her and asked if she "wanted company." Id. at 754.

Of all these plaintiffs, only Ms. Jordan, Ms. Henry, and Ms. Johnson stated that they complained about Mr. Martin's conduct to other city officials. Ms. Jordan was the first to complain. She reported that, in July 1994, after Mr. Martin had propositioned her in exchange for sexual favors, she attempted unsuccessfully to speak with Mr. Martin's supervisor over the telephone. Ms. Embry then advised her to write a letter to Mr. Garvin, whom she said was Mr. Martin's supervisor. Ms. Jordan did so, but on the day after she sent the letter, Mr. Martin came to her house and confronted her with it. See id. at 832.

6

Ms. Henry testified that she complained about Mr. Martin the following year. She stated that, in the spring of 1995, after Mr. Martin had visited her home and told her to meet him with a gown on, she went to Mr. Garvin's office and reported the incident to him personally. According to Ms. Henry, Mr. Garvin told her, "I'll take care of this for you, don't worry about it." See id. vol. III, at 905.

Finally, in January 1996, after Mr. Martin hugged and touched her in a sexual manner, Ms. Johnson reported his conduct to city officials. After meeting with Mr. Williamson, Mr. Martin submitted his resignation.

In addition to the complaints made by Ms. Jordan, Ms. Henry, and Ms. Johnson, the record indicates that, in 1993, an unidentified woman met with Mr. Williamson (the City's Personnel Director) about possible fraud involving the roofing of her house. Mr. Williamson referred the woman to the Muskogee Police Department, and, during her interview with the Department, she reported that Mr. Martin had made sexual remarks and engaged in unwanted sexual touching. The woman did not file a formal complaint against Mr. Martin.

In deposition testimony, Mr. Williamson acknowledged that he learned about the woman's allegations against Mr. Martin. He stated that he reported the information to the head of Mr. Martin's department but that he did not know if the head of Mr. Martin's department conducted any investigation or took any action against Mr. Martin. Mr. Williamson did not mention any other action that he took as a result of the information

7

about Mr. Martin.

In contrast, Mr. Garvin did not acknowledge hearing about any of the allegations against Mr. Martin until January 1996, when Ms. Johnson complained to city officials. At that time, Mr. Garvin stated, he learned about not only Ms. Johnson's allegations but also about some of the complaints about Mr. Martin advanced by Ms. Henry. However, Mr. Garvin added that it was not until March or April of 1996 that he discovered that Ms. Henry's complaints involved sexual harassment.

In the district court proceedings, Mr. Martin, Mr. Garvin, and Mr. Williamson moved for summary judgment on several grounds. They argued that they could not be held liable under 42 U.S.C. § 1983 because Mr. Martin had not acted under color of law and that many of the plaintiffs' allegations were barred by section 1983's two-year statute of limitations. Mr. Martin, Mr. Garvin, and Mr. Williamson also argued that they were entitled to qualified immunity because the plaintiffs had failed to allege that they had violated clearly established law.

To a certain extent, the district court agreed with the defendants. The court concluded that three of the plaintiffs had failed to allege that Mr. Martin used his official position with the City of Muskogee in engaging in sexual harassment, and it therefore granted summary judgment to the defendants on all of their claims.[1] The court also

---

[1] These three plaintiffs (Laneeta Bradley, Zella Bradley, and Kim June) are not parties to this appeal.

8

concluded that the defendants were entitled to summary judgment on all of the plaintiffs' claims that were based on incidents of sexual harassment that occurred before October 17, 1994 (i.e., more than two years before the filing of the complaint in the district court).

Aside from the claims not involving the use of Mr. Martin's official position and the claims preceding October 17, 1996, the district court denied the defendants' motion for summary judgment. As to Mr. Martin, the court reasoned that during the period from October 1994 until January 1996, when Mr. Martin allegedly engaged in the conduct at issue, it was clearly established that a public official could violate the Equal Protection Clause by exercising government authority in order to sexually harass a citizen who is not a government employee. As to Mr. Garvin and Mr. Williamson, the court held that, accepting the plaintiffs' allegations as true, these two defendants could be held liable as Mr. Martin's supervisors for failing to take action against Mr. Martin after receiving complaints about him. Mr. Martin, Mr. Garvin, and Mr. Williamson now seek to challenge these qualified immunity rulings on appeal.

## II.  DISCUSSION

### A   Jurisdiction over appeal of the denial of qualified immunity

We must first determine whether we have jurisdiction to proceed with this appeal. As a general rule, we have jurisdiction to review only "final decisions" of the district courts.  See 28 U.S.C. § 1291; Johnson v. Jones, 515 U.S.  304, 309 (1995).

9

Nevertheless, in Cohen v. Beneficial Indus. Loan Corp., Inc., 337 U.S. 541 (1949), the Supreme Court held that certain collateral orders not constituting final orders are appealable under 28 U.S.C. § 1291. See Coopers & Lybrand v. Livesay, 437 U.S. 463, 468 (1978) (noting that in order to be appealable under the Cohen collateral order doctrine, a district court decision must: (1) conclusively determine the disputed question; (2) resolve an important issue completely separately from the merits of the action; and (3) be effectively unreviewable on appeal from a final judgment).

In Mitchell v. Forsyth, 472 U.S. 511 (1985), the Court applied the Cohen collateral order doctrine to district court decisions denying public officials' motions for summary judgment asserting the defense of qualified immunity. In order to be appealable, the Court said, the district court's decision must concern not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of 'clearly established' law. Johnson, 515 U.S. at 311 (discussing Mitchell, 472 U.S. at 528).

In Johnson, the Court recognized that in spite of the fact that district court decisions denying motions for summary judgment on qualified immunity grounds often satisfy the requirements for interlocutory appeal, there is still a class of qualified immunity summary judgment rulings that are not immediately appealable. In particular, the Court held, "a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." Id. at 319-320; see

also Foote v. Spiegel, 118 F.3d 1416, 1422 (10th Cir. 1997) (explaining Johnson). The Johnson Court explained that when the district court's summary judgment ruling merely determines the sufficiency of the evidence offered by the plaintiff in response to the defendant's factual assertions, the appeal is unlikely to involve the kind of abstract legal issues separate from the fact-related issues that will arise at trial. Thus, many of the justifications for applying the Cohen collateral order doctrine will not be present. See Johnson, 515 U.S. at 313-20.

In applying Johnson, several circuits have noted that even though a district court concludes that there are controverted factual issues, a summary judgment ruling may still be immediately appealable in certain circumstances. In particular, if a defendant's appeal of the denial of a motion for summary judgment is based on the argument that, even under the plaintiff's version of the facts, the defendant did not violate clearly established law, then the district court's summary judgment ruling is immediately appealable. See, e.g, Brewster v. Board of Educ. of Lynwood Unified Sch. Dist., 149 F.3d 971, 976 (9th Cir. 1998) ("In resolving the appeal, we simply assume the disputed facts in the light most favorable to [the plaintiff], and then decide, under those facts, whether the [defendants] violated any of [the plaintiff's] clearly established constitutional rights."); Moniz v. City of Ft. Lauderdale, 145 F.3d 1278, 1281 (11th Cir. 1998) ("[W]here, as here, the appeal is based on an assertion that, even on the plaintiff's version of the facts, the defendants are entitled to qualified immunity as a matter of law, we have jurisdiction to review the denial

11

of summary judgment interlocutorily."); Tierney v. Davidson, 133 F.3d 189, 194 (2d Cir. 1998) ("Even where the lower court rules that material disputes of fact preclude summary judgment on qualified immunity, we may still exercise interlocutory jurisdiction if the defendant contests the existence of a dispute or the materiality thereof, or (what may be the same thing) contends that he is entitled to qualified immunity even under plaintiff's version of the facts."); Anderson v. Romero, 72 F.3d 518, 520 (7th Cir. 1995) (" It does not follow from either the rule or its rationale that the presence of factual disagreement automatically vitiates an immunity appeal. If there is no possible resolution of the disagreement that would save the plaintiff's case from the defense of immunity, the appellate court will not have to resolve any factual disagreements, or even decide whether there are material factual disagreements, in order to determine whether the defense is good.").

In that circumstance, these courts reason, a qualified immunity appeal raises the kind of abstract legal issues that are separate from the factual issues that may arise at trial. Accordingly, the Cohen collateral order doctrine may be applied to provide appellate jurisdiction. Several decisions of this circuit have expressed agreement with this distinction between different kinds of qualified immunity appeals. See Foote, 118 F.3d at 1422 (concluding that appellate jurisdiction exists when a defendant challenges on appeal the district court's "determination that under either party's version of the facts the defendant violated clearly established law") (emphasis added); Armijo v. Wagon Mound

12

Public Schools, 159 F.3d 1253, 1258 (10th Cir. 1998) (same).

Applying Johnson and these subsequent circuit decisions, we conclude that we have jurisdiction over this appeal. In their appellate briefs, the defendants raise two issues: (1) they all argue that when Mr. Martin allegedly engaged in the sexual harassment at issue in this case (i.e., from October 1994 until his resignation in January 1996), it was not clearly established that a public official who used his position to sexually harass a nonemployee violated the Equal Protection Clause of the Fourteenth Amendment; and (2) Mr. Garvin and Mr. Williamson argue that, even if the Equal Protection Clause may be applied to the sexual harassment of nonemployees, their acts and omissions as Mr. Martin's supervisors do not render them liable for his acts of sexual harassment. It is beyond cavil that the first issue raised an abstract legal question that we have jurisdiction to review in an appeal of an interlocutory order. See Radecki v. Barela, 146 F.3d 1227, 1229 (10th Cir. 1998).

The second issue presents a closer question. There is no doubt that the ultimate determination of whether Mr. Garvin and Mr. Williamson may be held liable as supervisors involves the resolution of factual matters and that the district court, in its order denying the motion for summary judgment, observed that some of these relevant factual matters were controverted. See Garvin and Williamson's App. vol III, at 1234, 1260 (district court orders noting that there are controverted material facts as to whether Mr. Williamson had supervisory authority over Mr. Martin and whether Mr. Garvin had

-14-

actual notice of the sexual harassment allegations against Mr. Martin).

Nevertheless, in this appeal, Mr. Garvin and Williamson do not dispute the district court's determination that there are controverted factual issues relevant to resolving the question of their liability as supervisors. Instead, these two defendants argue that even accepting the plaintiffs' allegations as true (i.e., that they were informed of Mr. Martin's acts of sexual harassment at various times in the period from 1993 to 1995), they still may not be held liable as supervisors. Accordingly, their argument regarding supervisory liability is best characterized as one of the types of arguments identified in Foote (and the other circuit decisions discussed above)-- a challenge to the district court's "determination that under [the plaintiffs'] version of the facts the defendant[s] violated clearly established law." Foote, 118 F.3d at 1422. We therefore conclude that we have jurisdiction to consider Mr. Garvin's and Mr. Williamson's argument that their alleged acts and omissions as supervisors are insufficient to render them liable for Mr. Martin's alleged acts of sexual harassment and that, as a result, they are entitled to qualified immunity.

## B. Sexual Harassment of Nonemployees

In challenging the district court's denial of their motions for summary judgment, Mr. Martin, Mr. Garvin, and Mr. Williamson argue that, when Mr. Martin allegedly engaged in sexual harassment at issue, it was not clearly established that a public official

who used his position to sexually harass a nonemployee violated the Equal Protection Clause of the Fourteenth Amendment. As a result, they maintain, the district court erred in concluding that the law was clearly established and in rejecting their arguments that they are entitled to qualified immunity. We engage in de novo review of the district court's ruling that the law was clearly established. See Radecki, 146 F.3d at 1229 ("whether . . . prior law clearly prohibited the defendant's conduct [is] [a] question[] of law that we review de novo"), cert. denied, 119 S. Ct. 869 (1999).

The doctrine of qualified immunity protects public officials performing discretionary functions unless their conduct violates "'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Jantz v. Muci, 976 F.2d 623, 627 (10th Cir.1992) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In order for a law to be clearly established "'there must be a Supreme Court or other Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the plaintiff maintains.'" Murrell v. School District No. 1, Denver, Colo., No. 97-1055, 1999 WL 569138, at *11 (10th Cir. Aug. 4, 1999) (quoting Medina v. City & County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992)). However, we have recently recognized that the concept of clearly established law should not be applied too literally. See id. (rejecting the argument that qualified immunity protected school employees from sexual harassment claims under § 1983 simply "because there has previously been no case holding an individual school employee

-16-

liable for sexual harassment under the Fourteenth Amendment"). Thus, "[w]e have never said that there must be a case presenting the exact fact situation at hand in order to give parties notice of what constitutes actionable conduct." Id. Instead, we merely require the parties to make a reasonable application of existing law to their own circumstances. Id.

Here, the defendants argue that it was not until this circuit decided Whitney v. State of New Mexico, 113 F.3d 1170 (10th Cir. 1997), that it became clearly established that a public official could be held liable for violating the Equal Protection Clause of the Fourteenth Amendment by sexually harassing a nonemployee. In Whitney, the court reversed a grant of summary judgment to a public official who sexually harassed the plaintiff while deciding whether to grant her a daycare license. The court applied West v. Atkins, 487 U.S. 42 (1988), in which the Supreme Court observed that a person acts under color of state law if he "exercise[s] power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Id. at 1174 (quoting West, 487 U.S. at 49). The Whitney opinion also cited a Ninth Circuit case, Dang Vang v. Vang Xiong X. Toyed, 944 F.2d 476 (9th Cir. 1991), in which the court concluded that a state official could be liable for sexual harassment under § 1983 for assaulting two refugees who sought an appointment with him in his official capacity. The Whitney opinion summarized its conclusion as follows:

> Applying the standards set out in West, as elucidated by the Ninth Circuit in Vang Dang, this court resolves that [the plaintiff's] allegations of sexual assault by [the defendant] are sufficient to state a claim upon which relief could be

> granted. Read liberally, [the plaintiff's] complaint alleges that [the defendant] harassed her at a time that [the defendant] had some state-derived authority over her ability to get a license. Furthermore, assuming . . . that [the plaintiff's] allegations are true], [the defendant] could not have harassed [the plaintiff] absent his authority as an agent for the State.

Id. at 1174-75 (citations omitted).

Until reading Whitney, the defendants argue, a reasonable public official in their position, although knowing that the alleged conduct of Mr. Martin was improper and perhaps realizing that it violated certain state and federal laws, would not have known that the conduct violated the Equal Protection Clause of the Fourteenth Amendment. The defendants base this argument on a narrow reading of this circuit's § 1983 sexual harassment decisions preceding Whitney. They observe that, prior to Whitney, the decisions in which we concluded that public officials could be held liable for sexual harassment under the Equal Protection Clause all involved harassment in the employment context--either by supervisors harassing subordinates or by a nonsupervisor somehow using governmental authority to harass a fellow employee. See Starrett v. Wadley, 876 F.2d 808 (10th Cir. 1989); Woodward v. City of Worland, 977 F.2d 1392 (10th Cir. 1992); Noland v. McAdoo, 39 F.3d 269 (10th Cir. 1994); David v. City & County of Denver, 101 F.3d 1344 (10th Cir. 1996), cert. denied, 118 S. Ct. 157 (1997).

We agree with the defendants that Starrett, Woodward, Noland, and David all discuss sexual harassment in the employment setting. In Starrett, we first recognized that public officials may be held liable for sexual harassment in a § 1983 action asserting a

-18-

violation of the Equal Protection Clause.  See Starrett, 876 F.2d at 814. The plaintiff in

Starrett had alleged that her supervisor had sexually harassed her.  In Woodward, we

granted qualified immunity to police officers accused of sexual harassment because they

were not the plaintiffs' supervisors and because they lacked control or authority over

them.  We reasoned that in order to satisfy § 1983's "color of law" requirement, the

defendant in a sexual harassment claim must exercise some governmental authority over

the plaintiff:

> We have been cited no case clearly holding that sexual harassment on the job by one who is not in a position of authority over the victim is actionable under the Equal Protection Clause and § 1983.  To the contrary, several cases have declined to find liability under § 1983 against a co-employee for harassment when the harassment did not involve the use of state authority or position.
>
> Typically, liability under the Equal Protection Clause for sexual harassment in the workplace is predicated upon some authority that the wrongdoer has over the victim.  Otherwise, it is difficult to establish that the abusive action was perpetrated "under color of state law" rather than as an essentially private act of sexual harassment.  The mere fact that all the participants were state employees or that the offending acts occurred during working hours is not enough.

Woodward, 977 F.2d at 1400-01 (citations omitted).

In Noland, we intimated that the exercise of supervisory authority might not be the

only way of satisfying the color of law requirement in § 1983 sexual harassment claims.

See Noland, 39 F.3d at 271 ("The parties agree . . . that in order to establish the state

action necessary to support a § 1983 claim, [the defendant] had to be plaintiff's

supervisor <u>or in some other way exercise state authority over her</u>.") (emphasis added).

Finally, in <u>David</u>, we held that a police officer might be able to establish a § 1983 sexual harassment claim against two fellow officers if they "had supervisory authority over her or in some other way exercised state authority over her." <u>David,</u> 101 F.3d at 1354.

Even though <u>Starrett</u>, <u>Woodward</u>, <u>Noland</u>, and <u>David</u> all involve alleged sexual harassment in an employment setting, we are not convinced that, prior to <u>Whitney</u>, the law was unclear as to whether a public employee could be held liable for using governmental authority to sexually harass a nonemployee. There is no indication in those decisions that a public official's abuse of governmental authority in furtherance of sexual harassment in the employment setting is fundamentally different than when the abuse of authority occurs outside the workplace. That conclusion is supported by the approach we adopted in <u>Whitney</u>–the case that the defendants characterize as breaking new ground by extending § 1983 to sexual harassment claims brought by nonemployees.

In <u>Whitney</u>, we relied primarily on a Supreme Court decision issued in 1988, <u>West v. Atkins</u>, 487 U.S. 42 (1988). There, in holding that a physician providing medical services to a prisoner acts under color of law, the Supreme Court relied on general principles regarding state officials' liability under § 1983. The Court observed that "[i]t is firmly established that a defendant acts under color of law when <u>he abuses the position given to him by the State</u>." <u>Id</u>. at. 49-50 (emphasis added). That general statement about public officials' abuse of their authority was itself based on well-established authority.

Indeed, one treatise on § 1983 notes that there is only one case in which the Court has held to the contrary, i.e., "'that a person who is employed by the State and who is sued under § 1983 for abusing his position in the performance of his assigned tasks was not acting under color of law.'" 1 Martin A. Schwartz & John E. Kirklin, Section 1983 Litigation: Claims, Defenses, and Fees, § 5.5, at 253 (1991) (quoting West, 487 U.S. at 50 and referring to Polk County v. Dodson, 454 U.S. 312 (1981), a case involving a public defender sued by his client). Thus, in allowing a nonemployee to assert a § 1983 sexual harassment claim against a public official, Whitney applies established principles regarding the liability of public officials for abusing governmental authority.

In our view, Whitney illustrates the obvious proposition that public officials frequently exercise governmental authority in many ways not involving their authority over subordinate employees. Thus, police officers exercise governmental authority in stopping motorists, health officials exercise authority in inspecting restaurants, judges exercise authority in sentencing defendants, and building inspectors (like the defendant Mr. Martin) exercise authority in reviewing applications for permits and assessing compliance with municipal codes. In fact, the statute that provides the plaintiffs with a potential remedy here, 42 U.S.C. § 1983, has been frequently applied to abuses of authority outside of the employment context. See Hernandez v. Denton, 861 F.2d 1421, 1428 (9th Cir. 1988) (Aldisert, J., concurring) (noting that § 1983 "has been successfully utilized to correct tens of thousands of civil rights violations of all description, in high

-21-

school classrooms to maximum security wings of state prisons"), vacated on other grounds, 493 U.S. 801 (1989).

We therefore conclude that, during the period of time that Mr. Martin allegedly engaged in the acts of sexual harassment, a public official's reasonable application of the prevailing law would lead him to conclude that to abuse any one of a number of kinds of authority for purpose of one's own sexual gratification (including the abuse of the authority granted a municipal building inspector) would violate the Equal Protection Clause. Cf. Murrell, 1999 WL 569138, at *11-12 (concluding that supervisory school employees had sufficient notice that they could be held liable under the Equal Protection Clause even though prior cases involving supervisory liability did not involve school settings). As a result, the defendants are not entitled to qualified immunity on the grounds that the law regarding sexual harassment of nonemployees was not clearly established during the period from October 1994 to January 1996.

### C.  Supervisory Liability of Defendants Garvin and Martin

Mr. Garvin and Mr. Williamson argue in the alternative that even if Mr. Martin may be held liable under § 1983 for sexually harassing the plaintiffs, the district court erred in concluding that they may be held liable as supervisors and in denying their motions for summary judgment under the doctrine of qualified immunity.  As we have noted in discussing the question of whether we have jurisdiction over these appeals, we

read the appellate briefs of Mr. Garvin and Mr. Williamson as arguing that, even if one accepts the plaintiffs' evidence that these two supervisors had some knowledge of the allegations against Mr. Martin during the period from 1993 to 1995, this knowledge is still insufficient to render them liable for Mr. Martin's conduct on the basis that they failed to properly supervise him.

In assessing this argument, we review the district court's grant of summary judgment to Mr. Garvin and Mr. Williamson de novo, applying the same standards as the district court under Fed. R. Civ. P. 56. See Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). Factual disputes must be resolved and inferences drawn in favor of the nonmoving parties. See id.

As the district court noted, the Tenth Circuit standard for supervisory liability under § 1983 is stated in Woodward v. City of Worland, 977 F.2d 1392 (10th Cir. 1992). There, we concluded, "[T]he proper articulation of the test for supervisory liability under section 1983 is that set forth in the Third Circuit in Andrews v. City of Philadelphia, 895 F.2d 1469 (3d Cir. 1990), where it was stated that supervisor liability requires "'allegations of personal direction or of actual knowledge and acquiescence.'" Woodward, 977 F.2d at 1400 (quoting Andrews, 895 F.2d at 1478). Under this standard, mere negligence is insufficient to establish supervisory liability. Id. at 1399. Moreover, "[m]erely characterizing the negligence as 'gross' does not change its essential character." Id. at 1399 n. 11. "Neither simple nor gross negligence implies an intentional

and deliberative violation of constitutional rights, and consequently neither form of negligence satisfies the scienter requirement of § 1983." Id. On the other hand, "recklessness does include an element of deliberateness–a conscious acceptance of a known serious risk. As such, recklessness is generally regarded as satisfying the scienter requirement of section 1983 because it requires proof that the defendant focused upon the risk of unconstitutional conduct and deliberately assumed or acquiesced in such risk." Id. (internal citations and quotations omitted).

Applying this standard to a sexual harassment claim, the Woodward court concluded that if a plaintiff shows merely that a supervisor should have known that sexual harassment was occurring but that he or she failed to stop it, the supervisor should not be held liable for the sexual harassment under § 1983. In that circumstance, the court said, the plaintiff would have demonstrated only that the supervisor was negligent "in not observing what he should have seen." Id. at 1399.

The standard for supervisory liability set forth in Woodward has been applied to sexual harassment claims by many courts. In instances in which a plaintiff demonstrates that a supervisor had actual knowledge of the harassment but failed to take any remedial action (e.g., by investigating the allegations and taking disciplinary action against the harassing subordinate employee), courts have concluded that the supervisor may be held liable. For example, in Andrews, the Third Circuit decision cited in Woodward, the court concluded that two supervisors were properly held liable because they were aware of

-24-

sexual harassment by subordinates and did "very little" and "nothing" to remedy it. Andrews, 895 F.2d at 1479; see also Robinson v. City of Pittsburgh, 120 F.3d 1286, 1294 (3d Cir. 1997) (citing Andrews and observing that "[w]here a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor 'acquiesced' in (i.e., tacitly assented to or accepted) the subordinate's conduct." ).

Similarly in Bator v. Hawaii, 39 F.3d 1021, 1029 (9th Cir. 1994), the court rejected a supervisor's argument that she was entitled to qualified immunity because she was not responsible for the alleged harassment. The Ninth Circuit observed that "[a] supervisor who has been apprised of unlawful harassment . . . should know that her failure to investigate and stop the harassment is itself unlawful." Id. The court acknowledged that in certain circumstances the contours of a supervisor's liability were uncertain. However, "[e]ven if the contours of a supervisor's responsibility are uncertain, complete inaction in the face of claimed harassment cannot be objectively reasonable conduct entitling a supervisor to qualified immunity." Id.. Recently, this court has expressed agreement with that principle. See Murrell, 1999 WL 569138 at *10 (concluding that the plaintiff stated a claim for supervisory liability for sexual harassment under § 1983 by alleging that the supervisors "knew about [the harassment] and acquiesced in that conduct by refusing to reasonably respond to it.").

We must now apply these principles to the plaintiffs' claims for supervisory

liability against Mr. Garvin and Mr. Williamson. As to the claims against Mr. Garvin, the plaintiffs presented evidence that Ms. Jordan sent him a letter about Mr. Martin in July 1994 and that Ms. Henry talked to Mr. Garvin about Mr. Martin in the spring of 1995. Although Mr. Garvin stated that he did not learn about the allegations of sexual harassment until 1996, we must accept the statements of Ms. Jordan and Ms. Henry as true for purposes of this appeal. Moreover, Mr. Garvin has not presented any evidence that he took any action to remedy the alleged sexual harassment prior to Mr. Martin's resignation from his position with the City of Muskogee in January 1996. Accordingly, accepting the statements of Ms. Jordan and Ms. Henry as true, the record supports the inference that Mr. Garvin knew about the allegations of sexual harassment in July 1994 but took no remedial action. Such knowledge and subsequent inaction is sufficient to establish supervisory liability under § 1983.

The plaintiffs' claims against Mr. Williamson present a closer question. As with Mr. Garvin, there is evidence in the record that Mr. Williamson learned of allegations that Mr. Martin had engaged in sexual harassment (in 1993, when the unidentified woman went to the Muskogee police). However, Mr. Williamson has stated that he did take some action: he reported the information to the head of Mr. Martin's department.

Nevertheless, the uncontroverted facts in the record do not establish that this response was sufficient to defeat the claims for supervisory liability against Mr. Williamson. Although Mr. Williamson stated that he was not Mr. Martin's supervisor

and argued that, as a result, his referral of the allegations against Martin to another employee was an appropriate response, the district court found that the "[p]laintiffs have created an issue of fact concerning the supervisory role that [Mr.] Williamson may have assumed in the discipline of employees through the testimony of others." App. of Garvin and Williamson, vol. III, at 1234. Mr. Williamson has not challenged this finding in this appeal.[2] Moreover, Mr. Williamson has not explained how the responsibility for investigating sexual harassment allegations was allocated within the City government. Thus, we are unable to determine whether, on the one hand, Mr. Williamson's referral of the allegations to the head of Mr. Martin's department constituted an appropriate assignment to the official who was ultimately responsible for conducting an investigation and taking corrective action or whether, on the other hand, Mr. Williamson's referral and subsequent failure to take any additional action himself constituted an abdication of his responsibilities as the City's Personnel Director. Accordingly, viewing the record in the light most favorable to the plaintiffs, there is evidence from which a trier of fact could conclude that Mr Williamson "knew about [the harassment] and acquiesced in that conduct by refusing to reasonably respond to it." See Murrell, 1999 WL 569138 at *10. Mr. Williamson is therefore not entitled to qualified immunity on the plaintiffs' claims

_____

[2]     Indeed, because we lack jurisdiction over qualified immunity appeals challenging district courts' determinations that there are disputed factual issues, see Johnson, 515 U.S. at 319-320, Mr. Williamson may not challenge this finding in this appeal.

against him.

Accordingly, we conclude that the district court's properly denied summary judgment on the supervisory liability claims against both Mr. Garvin and Mr. Williamson.

## III. CONCLUSION

For the reasons set forth above, the district court's decisions denying the summary judgment motions filed by Mr. Martin, Mr. Garvin, and Mr. Williamson on the grounds of qualified immunity are AFFIRMED.