**F I L E D**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

PAMELA D. FYE,

      Plaintiff-Appellee,

v.

OKLAHOMA CORPORATION
COMMISSION; BOB ANTHONY,
individually; JEFF CLOUD,
individually; R. CLARK MUSSER,
individually,

      Defendants,

    and

DENISE A. BODE; TOM DAXON,
individually,

      Defendants-Appellants.

No. 04-6363
(D.C. No. 03-CV-1477-C)
(W.D. Okla.)

**ORDER AND JUDGMENT**\*

---

\*     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Before **LUCERO**, **EBEL**, and **MURPHY**, Circuit Judges.

_____

Appellants bring this interlocutory appeal from the district court's denial of qualified immunity. Qualified immunity generally shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Although plaintiff disputes our jurisdiction over this appeal, we conclude that jurisdiction is proper pursuant to 28 U.S.C. § 1291 and AFFIRM.

## I. Background[1]

During the time relevant to this case, Plaintiff Pamela D. Fye worked for defendant Oklahoma Corporation Commission (OCC), a state agency, as the Director of the Administrative Division. Defendant Denise A. Bode was an Oklahoma Corporation Commissioner. Defendant Tom Daxon became the OCC's acting General Administrator on February 3, 2003, and Fye reported directly to him.[2] In response to Daxon's inquiry whether discrimination or sexual harassment was an issue within the OCC, Bode referred him to Fye because Fye

_____

[1]     Although some of the facts in this case are disputed, we accept Fye's version of them as true for purposes of this appeal only.

[2]     Fye's claims against the other defendants are not at issue in this appeal.

-2-

had complained about sexual harassment by a former General Administrator, Jay Edwards, in 1999. Bode had responded promptly to that complaint.

Fye alleges that Daxon persistently and repeatedly asked her for specific details about Edwards' conduct over the course of several weeks in February 2003. Fye declined to answer Daxon's questions about Edwards, telling him on at least two occasions that she was uncomfortable discussing it. Fye contends that she told Bode about Daxon's behavior on February 24, 2003, but Bode never investigated her complaint.

In her role as Alternate Grievance Manager, Fye received complaints about Daxon from other employees, including Karen DePue. Among other things, DePue told Fye that Daxon said viewing pornography on his home computer had aroused him, and he compared her to the women that he viewed.

On March 4, Fye delivered a letter to Daxon's office in which she asked that he stop asking about the Edwards matter and requested that another employee be present whenever the two of them had to discuss work matters. The letter reinforced Daxon's concern that friction between Fye and other employees was adversely affecting the functioning of the office. Daxon decided to terminate Fye's employment because he felt the situation was beyond repair. He completed a termination letter that was delivered to Fye on March 6, effective immediately.

In her amended complaint in this action, Fye raised a number of claims, two of which are pertinent to this appeal, (i) a sexual harassment claim against the OCC under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, and (ii) a claim pursuant to 42 U.S.C. § 1983 that Daxon and Bode violated her right to equal protection under the Fourteenth Amendment. The district court denied the OCC's motion for summary judgment as to the Title VII claim, finding that Daxon's repeated attempts to obtain specific details about the Edwards matter could be construed as an "effort to force Fye to recount all the salacious details of her encounters with Edwards for Daxon's personal sexual satisfaction." Aplt. App. II at 613. The court considered its interpretation reasonable in light of the allegation in DePue's affidavit concerning Daxon's statements about viewing pornography on the internet and comparing DePue to the women he viewed there. Considering Fye's contention that Daxon questioned her "almost daily," the court concluded that a reasonable juror could find that "daily questioning about such a sensitive subject is sufficiently pervasive to interfere with a reasonable person's work performance." Id. at 614.

In addressing the motion for summary judgment as to the § 1983 claim against Daxon, the court referenced the findings in its Title VII analysis and concluded that, because it was clearly established at the time of Daxon's conduct that sexual harassment under color of state law violates the Equal Protection

-4-

Clause, he was not entitled to qualified immunity. The court also concluded that Bode was not entitled to qualified immunity because, at the time of her alleged failure to act on Fye's complaint, it was clearly established that a supervisor may be liable under § 1983 if she had actual knowledge of sexual harassment and failed to take action. This appeal followed.

## II. Jurisdiction

Under the collateral order doctrine, "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). However, this jurisdiction is limited to appeals challenging "not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of 'clearly established' law." Johnson v. Jones, 515 U.S. 304, 311 (1995) (quoting Mitchell, 472 U.S. at 528). Thus, "a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." Id. at 319-20. Nevertheless, if a defendant's appeal of the denial of qualified immunity "is based on the argument that, even under the plaintiff's version of the facts, the defendant did not violate clearly established law, then the district court's summary judgment ruling is

immediately appealable." Johnson v. Martin, 195 F.3d 1208, 1214 (10th Cir. 1999).

Here, Daxon and Bode maintain that they are entitled to qualified immunity even under Fye's version of the facts. Although they question those facts at some points in their briefing, we have jurisdiction over their challenge to the denial of qualified immunity to the extent it is limited to Fye's version of the facts.

### III. Merits

"We review the denial of a summary judgment motion raising qualified immunity questions de novo." Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001). When a defendant raises the defense of qualified immunity, a plaintiff must establish that the defendant's conduct violated a federal constitutional or statutory right and that the right was clearly established at the time of the conduct. Id.

Daxon contends that his conduct, as alleged by Fye, does not constitute actionable sexual harassment. He argues that his conduct was not severe or pervasive enough to rise to the level of a constitutional violation because it consisted only of asking her about the Edwards matter on four separate occasions and she never recounted the details. In other words, he argues that his conduct did not create a hostile work environment. We disagree. "For sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the

conditions of [the victim's] employment and create an abusive working environment.'" Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986) (brackets in original) (quoting Henson v. City of Dundee, 682 F.2d 897, 904 (11th Cir. 1982)). The conduct must be severe or pervasive enough to create an environment that is both subjectively and objectively hostile or abusive. Smith v. Nw. Fin. Acceptance, Inc., 129 F.3d 1408, 1413 (10th Cir. 1997). Whether an environment is hostile or abusive is determined by looking at the totality of the circumstances. Id. Although the test is phrased in the disjunctive, severity and pervasiveness are interdependent: The more severe the conduct, the less pervasive it needs to be; the more pervasive, the less severe. Cf. Lockard v. Pizza Hut, Inc., 162 F.3d 1062, 1072 (10th Cir. 1998) (rejecting the notion that a single occurrence can never constitute sexual harassment).

There is no question that Fye subjectively considered Daxon's questioning hostile or abusive. Based on the sensitive subject matter of his inquiries and the frequency with which they occurred, a reasonable juror could conclude that Daxon pursued his questioning of Fye for his own sexual gratification and that the conduct was severe or pervasive enough to constitute a violation of Fye's equal protection rights.[3] DePue's complaints about Daxon's conduct support, but are

---

[3]     Appellants contend that the record reflects Daxon questioned Fye about the Edwards matter only four times, not "almost daily" as the district court found.
(continued...)

not essential to, this conclusion. Therefore, we decline appellants' invitation to exercise jurisdiction over the district court's denial of their motion to strike DePue's affidavit. See Stewart v. Oklahoma, 292 F.3d 1257, 1260 (10th Cir. 2002) (explaining that this court will exercise pendent appellate jurisdiction in interlocutory appeals where a matter is inextricably intertwined with, or necessary to a meaningful review of, the appealable decision). We also disagree with appellants that an important consideration is the fact Fye did not provide details of the Edwards matter to Daxon; the harassment consists of the asking.

Daxon argues that his conduct falls far short of the conduct that was at issue in a plethora of cases where a court held as a matter of law that there was no hostile work environment. However, none of those cases presents a factual situation analogous to the present one. Therefore, they are of little help in gauging the severity or pervasiveness of the conduct at issue here.

Having determined that Daxon's conduct, as alleged by Fye, violated a federal constitutional right, we now turn to whether the right was clearly established at the time of the conduct. "[I]n order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the

---

[3](...continued)
The sufficiency of the district court's factual finding is outside of the scope of our jurisdiction under the collateral order doctrine. See Johnson, 515 U.S. at 313.

law to be as the plaintiff maintains." Medina v. City & County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992). The authoritative case need not present the identical fact situation; rather, the parties need only "make a reasonable application of existing law to their own circumstances." Martin, 195 F.3d at 1216.

The district court relied on Woodward v. City of Worland, 977 F.2d 1392, 1397 (10th Cir. 1992), for the proposition that, at the time of Daxon's conduct, it was clearly established that sexual harassment committed under color of state law is a violation of the Equal Protection Clause. Daxon argues that it is insufficient to identify an abstract constitutional right such as a right to be free of sexual harassment. Instead, Daxon urges us to undertake a more "particularized" review of his actions. Essentially, Daxon asks us to determine that his conduct did not violate a clearly established constitutional right because, at the time of his conduct, there was no case factually similar enough to this case.

We think the general statement in Woodward is sufficient under the facts of this case. A reasonable official should have known that repeatedly attempting to force an employee to recount salacious details of sexual harassment by another employee for the official's own sexual gratification falls within the sexual harassment proscribed by Woodward. Therefore, Daxon is not entitled to qualified immunity.

Any concern about a lack of particularity in <u>Woodward</u> is assuaged by our decision in <u>Martin</u>, 195 F.3d 1208. <u>Martin</u> concerned the liability of a municipal employee and his supervisors for the employee's request for sexual favors from non-employees in return for favorable decisions on permit applications. We held that a public official's "abuse of any one of a number of kinds of authority for purpose of one's own sexual gratification . . . would violate the Equal Protection Clause." <u>Martin</u>, 195 F.3d at 1218. We conclude that it is reasonable to apply the holding of <u>Martin</u> to the circumstances of this case notwithstanding the factual differences between the two. In his position as Fye's superior, Daxon repeatedly inquired about her past complaint of sexual harassment. Assuming he did this for his own sexual gratification, he abused his authority and violated Fye's equal protection rights. Therefore, even if it is unreasonable to apply <u>Woodward</u> to the facts of this case, Daxon is not entitled to qualified immunity under <u>Martin</u>.

Fye alleges that she told Bode about Daxon's conduct and that Bode never investigated it. "Such knowledge and subsequent inaction is sufficient to establish supervisory liability under § 1983." <u>Martin</u>, 195 F.3d at 1220. Bode's complete inaction in the face of actual knowledge, if proven, violated a constitutional right that was, at the time, clearly established, and she is not entitled to qualified immunity.

Bode contends that she was merely negligent in failing to investigate the complaint in the few days that elapsed between the day Fye complained (February 24) and the day Daxon terminated her employment (March 6). Because negligence is insufficient to establish supervisor liability under § 1983, see Martin, 195 F.3d at 1219, Bode concludes that she is entitled to qualified immunity. She also suggests that Fye sustained no compensable injuries after voicing her complaint to Bode. We are not persuaded. Bode promptly investigated Fye's earlier complaint about Edwards, but did nothing to investigate Fye's complaint about Daxon. A reasonable juror could conclude that Bode's complete failure to investigate the complaint about Daxon was more than a negligent delay. Whether Fye sustained any compensable injuries as a result of Bode's inaction is outside the scope of our review under the collateral order doctrine.

The order of the district court denying appellants' motion for summary judgment on the defense of qualified immunity is **AFFIRMED**.

Entered for the Court


David M. Ebel
Circuit Judge

-11-