FILED
United States Court of Appeals
Tenth Circuit

December 13, 2022

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

PATRICIA E. SHEPHERD, in her capacity
as personal representative of the Estate of
Heather Leyva,[1]

      Plaintiff - Appellant,

v.

BLAINE ROBBINS, a Utah Highway
Patrol Trooper,

      Defendant - Appellee.

No. 20-4053

_____

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:18-CV-00121-RJS)**

_____

Robert B. Sykes, Sykes McAllister Law Offices, PLLC (C. Peter Sorenson with him on
the briefs), Salt Lake City, Utah for Plaintiff-Appellant.

J. Clifford Petersen, Assistant Utah Solicitor General (Sean D. Reyes, Utah Attorney
General with him on the brief), Salt Lake City, Utah for Defendant-Appellee.

_____

Before **HARTZ**, **BRISCOE**, and **CARSON**, Circuit Judges.

_____

**CARSON**, Circuit Judge.

---

[1] Heather Leyva passed away while this litigation was pending and Patricia E.
Shepherd, personal representative of Leyva's estate, moved the Court on September
19, 2022, for an order substituting her as the Plaintiff in this appeal.  We grant Ms.
Shepherd's motion.  We deny all other pending motions as moot.

_____

Congress enacted 42 U.S.C. § 1983 as the vehicle to remedy a state actor's violation of a person's federal rights.  But even if a state actor violates a person's rights, we require that the right be clearly established for a plaintiff to prevail.  Today we confront whether the law clearly established that Defendant Utah Highway Patrolman Blaine Robbins violated Heather Leyva's ("Leyva") Fourteenth and Fourth Amendment rights by pulling her over without reasonable suspicion to do so and by sending her flirtatious texts about the administration of a commercial towing relationship between her employer and the Utah Highway Patrol. In doing so, we consider the unique relationship between Defendant and Leyva in the context of each alleged constitutional violation.  The district court found that Defendant did not violate clearly established law.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part, reverse in part, and remand for further proceedings.

I.

Leyva served as the heavy-duty towing liaison between the Utah Highway Patrol ("UHP") and West Coast Towing ("WCT")—one of three towing companies in the Heavy Duty Towing Rotation ("HDTR").  During her time as liaison, Leyva communicated regularly with Defendant because he managed the HDTR for the UHP. Over time their professional relationship developed into a personal one.

As the relationship evolved, Defendant's communications with Leyva extended beyond helping Plaintiff resolve her HDTR questions.  He sent dozens of flirtatious and suggestive text messages.  She sometimes responded in kind.  Plaintiff

2

claims Leyva did so because she feared upsetting Defendant would affect WCT's access to valuable heavy-duty towing jobs.

State rules obligated UHP to assign the heavy-duty towing jobs in accordance with a strict next-in-line rotation of the three companies. WCT management believed Defendant had been assigning towing jobs unfairly. Management often asked Leyva to discuss this with Defendant. So Leyva regularly asked Defendant about WCT's placement in the rotation. When asked, Defendant assured Leyva that he maintained balance in the rotation and confirmed WCT's placement.

A couple of months after working with each other and after the relationship started to change, Defendant texted Leyva one night around 5:00 p.m. He asked about work-related matters. In response to one question, Leyva told Defendant to "standby" because she was on the freeway. Defendant asked where and said he would pull her over. Defendant now insists this was a joke. Levya told him the mile-marker number as she passed it. Defendant asked where she was going. Leyva told him and said she would return in twenty minutes. Based on Plaintiff's response, Defendant said, "I'll be waiting 285. You in the what [sic] car. White car." Leyva never responded.

Two hours later, Leyva was driving home in a different car at a different location. Defendant spotted her, turned on his lights, and initiated an apparent traffic stop. Leyva pulled over, not knowing Defendant was the driver of the patrol car, and got her identification ready. Defendant said, "I don't need to see that, just seeing you

3

is enough." Defendant claims he pulled Leyva over as "a joke between friends." They spoke for a short time and then went their separate ways.

A month later, Leyva reported to her boss she felt Defendant was sexually harassing her. Her boss contacted UHP to report Leyva's complaints of sexual harassment. As a result, UHP conducted an investigation. Relevant to the issues on appeal, the investigation found Defendant did not improperly administer the HDTR but concluded his conduct revealed his desire to further his personal relationship with Leyva. It also determined that Defendant lacked reasonable suspicion when he stopped Leyva.

Meanwhile, Leyva continued to communicate with Defendant about WCT's access to heavy duty towing jobs. She insisted something seemed imbalanced, which prompted Defendant to say, "Now do not give me a reason not to like you." The record is unclear, but it appears this comment was among the final communications between Leyva and Defendant. Following the investigation, UHP demoted Defendant and reassigned another person to manage the HDTR.

II.

We review the district court's grant of summary judgment for qualified immunity de novo applying the same standard as the district court. Becker v. Bateman, 709 F.3d 1019, 1022 (10th Cir. 2013) (citation omitted). Ordinarily, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). But summary judgment based on qualified immunity

4

requires a different kind of review.  Becker, 709 F.3d at 1022.  When a defendant asserts a qualified immunity defense at the summary judgment phase, the burden shifts, and the plaintiff must show that (1) the defendant's conduct violated a constitutional right and (2) that the constitutional right was clearly established.  Id. (citation omitted).  The district court may address either prong first.  Id.  (citation omitted).  We review the district court's legal conclusions de novo.  Manning v. United States, 146 F.3d 808, 813 (10th Cir. 1998).

III.

Defendant does not dispute for purposes of this appeal that he violated Leyva's constitutional rights.  He argues only that the district court correctly determined the law was not clearly established for either alleged violation.  Constitutional rights are clearly established when Tenth Circuit or Supreme Court precedent particularized to the case at issue exists.  See Apodaca v. Raemisch, 864 F.3d 1071, 1076 (10th Cir. 2017).  Materially similar facts can make the precedent sufficiently particularized. Id.  Thus, a right is clearly established when our precedent encompasses "'materially similar conduct' or applies 'with obvious clarity' to the conduct at issue."  Id. (emphasis omitted) (quoting Est. of Reat v. Rodriguez, 824 F.3d 960, 964–65 (10th Cir. 2016)).   To be clear, we do not require plaintiffs to engage in a scavenger hunt for a prior case with identical facts.  See Casey v. City of Fed. Heights, 509 F.3d 1278, 1284 (10th Cir. 2007).  We ask whether the existing law provides fair warning to a defendant.  Est. of Smart v. City of Wichita, 951 F.3d 1161, 1168 (10th Cir. 2020) (citation omitted).

5

Plaintiff alleged, and the district court found, that a jury could find Defendant violated Leyva's Fourth and Fourteenth Amendment rights.  For the reasons below, we conclude that the district court erred by granting summary judgment on Plaintiff's Fourth Amendment and Fourteenth Amendment claims insofar as they relate to Defendant's traffic stop of Leyva.  But we agree with the district court that Plaintiff's Fourteenth Amendment rights arising in connection with the administration of HDTR, were not clearly established at the time of the violation.[2]

A.

Before the district court, Defendant asserted that Leyva consented to the traffic stop.  The district court rejected this argument because "[n]o reasonable citizen would feel free to disregard a UHP vehicle with its emergency lights activated." ROA Vol. II at 145.  And Defendant does not dispute this finding.  So we focus on the district court's finding that the law was not clearly established.

In making this finding, the district court analyzed whether "the law clearly established that *the* traffic stop did not constitute a consensual police-citizen encounter."  ROA Vol. II at 147 (emphasis added).  But that is not the proper inquiry.  Instead, the question is whether Defendant had fair notice that conducting *a* traffic stop without reasonable articulable suspicion of criminal activity violated clearly established law.

---

[2] Defendant does not contest the district court's conclusion that he violated Plaintiff's Fourteenth Amendment rights in connection with the administration of the HDTR or the traffic stop.  So we assume for purposes of our analysis that he did.

6

A traffic stop constitutes a seizure under the Fourth Amendment despite its limited and brief nature. United States v. Botero-Ospina, 71 F.3d 783, 786 (10th Cir. 1995) (en banc) (citation omitted). Because a traffic stop is like an investigative detention, we must determine whether the stop was reasonable under the circumstances. See id. To determine reasonableness, we ask two questions: (1) "whether the officer's action was justified at its inception," and (2) "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Id. (quoting Terry v. Ohio, 392 U.S. 1, 20 (1968)). A traffic stop is justified at its inception if an officer observes a traffic violation or "has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." Id. at 787.

Defendant argues that Leyva did not cite caselaw on point that provided a fair warning to a police officer that a citizen could not consent to the traffic stop. This argument fails for two reasons. First, by its very nature a traffic stop cannot be consensual. See United States v. Lopez, 443 F.3d 1280, 1284 (10th Cir. 2006) (explaining that a police encounter is not consensual if a reasonable person would not feel free to decline the encounter). That is especially true in Utah where a driver must pull over when an officer activates his emergency lights to signal a stop. See Utah Code Ann. § 41-6a-210(1).

Second, our reasonableness inquiry requires that an officer observe or have an articulable suspicion of a traffic violation before making a stop regardless of any other subjective motives the officer might have. Botero-Ospina, 71 F.3d at 787. A

7

reasonable officer in Defendant's shoes would have known that.  Defendant admits

he did not possess any reason to stop Leyva when he pulled her over.  He never asked

for her license or registration.  And he issued no citation.  He later noticed a cracked

windshield but concedes he did not observe or suspect this before stopping Leyva.

To him, he stopped Leyva as a "joke between friends."  Because Defendant pulled

Leyva over without at least an articulable suspicion of a violation, we conclude that

Defendant violated Leyva's clearly established Fourth Amendment right to be free

from an unreasonable seizure.

B.

Plaintiff also contends Defendant engaged in sexual harassment in the

administration of the towing agreement between UHP and WHP and, as a result,

violated Leyva's equal protection rights under the Fourteenth Amendment.  The

Fourteenth Amendment's Equal Protection Clause prohibits a state actor from

engaging in discriminatory conduct.[3]  See U.S. Const. amend. XIV, § 1.  And sexual

harassment constitutes sex discrimination under our jurisprudence.  See Starrett v.

---

[3] On appeal, Plaintiff argues that Defendant may not assert qualified immunity for a sexual harassment claim brought under § 1983.  We have addressed § 1983 sexual harassment claims in the past without addressing such an argument.  Whether a defendant in this context can raise qualified immunity as a defense remains an open question.  Plaintiff failed to raise this issue below and does not argue for plain error.  So Plaintiff forfeited the argument and subsequently waived it.  See Ave. Cap. Mgmt II, L.P. v. Schaden, 843 F.3d 876, 884–85 (10th Cir. 2016) (concluding that a party waives an argument by failing to raise it in district court and failing to argue for plain error review on appeal).  For this discussion, therefore, we assume a state actor may assert qualified immunity as a defense in a § 1983 equal protection claim on the basis of sexual harassment.

Wadley, 876 F.2d 808, 814 (10th Cir. 1989) (concluding that sexual harassment can violate the Fourteenth Amendment's Equal Protection Clause).   So a state actor violates the Equal Protection Clause of the Fourteenth Amendment when he commits sexual harassment.  Id.  In this context, sexual harassment occurs when a state actor abuses his governmental authority to further his own sexual gratification.  Johnson v. Martin, 195 F.3d 1208, 1218 (10th Cir. 1999) (concluding that a state agent's attempts to obtain sexual favors in exchange for favorable permit application and compliance determinations amounted to abuse of his governmental authority for the purpose of his own sexual gratification and thus violated the Equal Protection Clause).

Defendant does not dispute the district court's finding that his conduct violated Leyva's constitutional rights.  So we focus our inquiry on whether the law was clearly established.

In an effort to show the law is clearly established, Plaintiff relies on Johnson and Whitney v. New Mexico.  195 F.3d 1208; 113 F.3d 1170 (10th Cir. 1997).  Both cases establish a plaintiff can bring a claim under § 1983 when a defendant violates his or her equal protection rights through sexual harassment.  Both cases differ from this one, however.

We start with Whitney.  Whitney, a pro se plaintiff, alleged the state government defendants violated her equal protection rights by sexually harassing her. Whitney, 113 F.3d at 1172.  She alleged that New Mexico, through its agent Charles Patrick, harassed her and denied her a day care license based on her sex.  Id.  Patrick

9

continued to harass Whitney while she worked at the day care for which she sought the license. Id. The district court dismissed Whitney's claim sua sponte. Id. We reversed in part, reasoning that Whitney's claim against Patrick in his individual capacity survived because he used his state derived authority over her ability to get a license to sexually harass her. Id. at 1174. Without this authority to grant or deny Whitney a license, he could not have been liable under § 1983 for harassing her. Id. at 1175. But because Patrick allegedly harassed Whitney by abusing authority given him by the state, he engaged in state action sufficient to support an equal-protection claim. See id. at 1174–75. We thus found Whitney's allegations of sexual harassment sufficient to state a claim for relief allowing her to continue the litigation. Id.

Like the defendant in Whitney, the defendant in Johnson used his position as director of the city's Building Codes and Enforcement Department to obtain sexual gratification from the plaintiffs in exchange for favorable permit grants and findings of compliance with city codes. Johnson, 195 F.3d at 1211. We concluded that a public official has sufficient notice that abusing his state-derived authority for his own sexual gratification would violate the Equal Protection Clause. Id. at 1218. Our analysis focused on the context in which the defendant sexually harassed the plaintiffs—that the defendant had state-derived authority over the plaintiffs to approve permits. See id. The defendant implied he would withhold the approvals if the plaintiffs failed to indulge him. See id. at 1211–12.

10

We have only discussed Fourteenth Amendment equal protection claims involving sexual harassment a handful of times.[4]  In these cases, we focused on the nature of the relationship between the plaintiff and the defendant, and not the specific harassing conduct, when determining whether a constitutional violation occurred. See Woodward v. City of Worland, 977 F.2d 1392, 1401 (10th Cir. 1992) (concluding that we predicate liability for sexual harassment under the Equal Protection Clause on some governmental authority that the defendant has over the plaintiff).  So the nature and degree of authority a defendant has over a plaintiff informs whether the law is clearly established.

As discussed above, the law is clearly established when a state actor has fair notice that his conduct constitutes a violation.  The district court held the law was not clearly established on Plaintiff's Fourteenth Amendment claim because Defendant did not conduct himself in a materially similar way to defendants in previous cases. The district court's analysis focused on Defendant's overall specific conduct.  But the facts present two situations in which Plaintiff alleges he sexually harassed Leyva.

Some evidence supporting Plaintiff's sexual harassment claim derives from Defendant's role as HDTR Coordinator.  Other evidence involves Defendant's role as a highway patrolman.  But Plaintiff did not separately plead the sexual harassment

---

[4] See Eisenhour v. Weber Cnty., 744 F.3d 1220, 1233–35 (10th Cir. 2014); Sh.A ex rel. J.A. v. Tucumcari Mun. Schs., 321 F.3d 1285, 1288–89 (10th Cir. 2003); 195 F.3d at 1215–18; Whitney, 113 F.3d at 1173–75; Noland v. McAdoo, 39 F.3d 269, 271–72 (10th Cir. 1994); Lankford v. City of Hobart, 27 F.3d 477, 480–81 (10th Cir. 1994); Woodward v. City of Worland, 977 F.2d 1392, 1397–1401 (10th Cir. 1992); Starrett, 876 F.2d at 814–15.

claims arising from Defendant's role as HDTR Coordinator and his role as a patrol officer making the stop.[5]  Nor does Plaintiff specifically argue that Defendant sexually harassed Leyva during the traffic stop.  Even so, part of the sexual harassment claim below alleged that Defendant launched that traffic stop to flirt with Leyva.  And we analyze whether the clearly established prong is met by examining whether a reasonable official in Defendant's shoes would understand his conduct violated clearly established law.  See Kisela v. Hughes, 138 S. Ct. 1148, 1153 (2018) (per curiam).

A brief look into our § 1983 sexual harassment caselaw shows we have focused our inquiry on the context in which the conduct occurred.  When we first addressed this issue, we concluded that sexual harassment can violate the Equal Protection Clause in a governmental employment setting.  See Starrett, 876 F.2d at 814.  We then specified that such a claim existed for subordinates against their supervisors in government positions.  See Lankford v. City of Hobart, 27 F.3d 477, 480 (10th Cir. 1994). And from there, we explained that private citizens could also bring an equal-protection sexual-harassment claim when a state agent exercised governmental authority over them.  See Whitney, 113 F.3d at 1174.  We later extended the claim to the educational context involving claims by students against

---

[5] Plaintiff argues the "sliding scale" approach should apply to show that the unlawfulness of Defendant's conduct was apparent.  Our more recent jurisprudence has shifted to consider "obvious clarity" or "flagrantly unlawful conduct" rather than engage in the sliding scale approach.  See Lowe v. Raemisch, 864 F.3d 1205, 1210–11, 1211 n.10 (10th Cir. 2017); Contreras v. Doña Ana Cnty. Bd. of Cnty. Comm'rs, 965 F.3d 1114, 1123 (10th Cir. 2020) (Carson, J., Concurring).

teachers.  Sh.A ex rel. J.A. v. Tucumcari Mun. Schs., 321 F.3d 1285, 1289 (10th Cir. 2003).  So the cases in which we have found sexual-harassment-based constitutional violations under § 1983 involved a power imbalance created by the alleged harasser's governmental authority.

In this case, Plaintiff alleges Defendant sexually harassed Levya in the context of his position as HDTR Coordinator and as a highway patrolman.  Because Plaintiff's sexual harassment allegations occurred in two contexts, we separate Leyva's relationship with Defendant as HDTR Coordinator from her relationship with him as a highway patrolman.  Defendant's text messages occurred in a different context than the stop. When messaging Leyva, Defendant acted as the UHP HDTR Coordinator.  Because Leyva was the WCT representative, this made those text messages commercial in nature.  But during the traffic stop, Defendant acted as a police officer stopping a motorist.  These different roles present different contexts and thus require separate treatment.

### 1.

As HDTR Coordinator, Defendant created and maintained a towing rotation list of approved towing companies.  Although internal rules required that towing jobs be assigned on a rotational basis to approved companies, Defendant had the power and discretion to suspend WCT from heavy duty towing jobs.  He communicated regularly with Levya in her capacity as the liaison for WCT.  Their interactions were generally professional.  But the interactions also included private matters unrelated to each party's respective professional positions.  The record shows Defendant and

13

Plaintiff intertwined their personal and professional interactions making it difficult to separate them in any meaningful way. But one fact remains—Leyva's employer assigned her to act as WCT's liaison with HDTR, which required her to work with Defendant.

Plaintiff alleges she maintained her relationship with Defendant to keep from compromising WCT's access to these lucrative jobs. So, Plaintiff argues, Defendant occupied a position of power and that our decisions in Johnson and Whitney clearly established that his allegedly sexually harassing conduct violated the equal protection clause.[6] But Plaintiff's relationship in this context with Defendant differs materially from that found between the plaintiffs and the defendants in Johnson and Whitney. Defendant's role as manager of the HDTR and Plaintiff's role as Liaison for WCT created a commercial relationship between Defendant and Plaintiff based on a contract between two entities. And the towing agreement provided Defendant with the power to suspend WCT if WCT or an employee violated any terms of the agreement.

Defendant's authority over Plaintiff as liaison for the company existed because of this agreement. So unlike a situation involving a state official's ability to grant or deny a daycare license or permit, a service contract created a commercial relationship

---

[6] We do not ignore Plaintiff's testimony that Defendant believed he occupied a position of authority. See ROA Vol. II at 110. And we do not ignore Defendant's veiled threat telling Plaintiff not to "give [him] a reason not to like [her]" after she asked about the towing rotation again. See id. at 117. But this conduct goes to whether Defendant violated Plaintiff's constitutional rights, not whether it was clearly established.

between WCT and UHP.  And at the time of Defendant's conduct, the prevailing law did not establish with obvious clarity and therefore did not provide fair warning for Defendant to know that in his role as HDTR Coordinator, he occupied a position of governmental authority—as opposed to commercial authority—over Plaintiffs.  So the law did not put him on notice that his conduct would violate Plaintiff's equal protection rights.

The dissent would hold that our precedents sufficiently put Defendant on notice that his alleged conduct violated clearly established law.  But the dissent's view ignores the level of factual specificity required in recent Supreme Court and Tenth Circuit authorities.  Our precedents have made clear that a claim of gender discrimination can arise in the context of a government employer/government employee relationship or the exercise of an inherently governmental power such as when a private citizen must obtain a permit from a government agency.  But it would be a material extension of our authorities to say that an actionable constitutional claim can arise out of a commercial relationship between a civilian and a government employee that involves a power differential that does not differ from those arising in a non-governmental setting.  Neither Plaintiff nor the dissent cites a case, from this or any other circuit, that would clearly establish the legal proposition they advance.

2.

In contrast, Defendant stood in his patrolman shoes when he stopped Leyva. We do not ignore that Defendant told Leyva he intended to stop her during their text exchange, but he did not stop her at the time and place stated in the message.  He

15

stopped Leyva two hours later, at a different location, and while she was driving a different vehicle than that described in the messages. And Defendant conducted this stop in a way that conformed with other legitimate stops—he pulled her over by turning on his patrol lights. Defendant does not dispute that he engaged in unconstitutional sexual harassment when he stopped Plaintiff. And the law was clearly established at the time that he could not use his state-derived authority as a police officer to engage in sexual harassment.

Ultimately, Plaintiff's appeal rises and falls on the question of whether Defendant's conduct violated clearly established law. To the degree that Defendant acted in his role as a patrolman when he stopped Leyva to flirt with her, we conclude he violated clearly established law. But our caselaw did not put Defendant on notice that he occupied a such position of authority over Leyva when acting as HDTR Coordinator that he would have known his actions violated clearly established law.

AFFIRMED in part, REVERSED in part, and REMANDED.[7]

---

[7] Appellant filed a motion for leave to file Volume III of her Opening Brief Appendix under seal because it contains a Notice of Intent to Discipline from the Department of Public Safety on Appellee's Internal Affairs investigation. She contends it contains sensitive information. Both parties claim they cannot effectively redact the document. On a motion to seal records, we require a party to overcome the presumption that the public has a common-law right to access judicial records. Williams v. FedEx Corp. Servs., 849 F.3d 889, 905 (10th Cir. 2017) (citation omitted). To overcome the presumption, the party "must articulate a real and substantial interest that justifies depriving the public of access to the records that inform our decision-making process." Id. (quoting Eugene S. v. Horizon Blue Cross Blue Shield of N.J., 663 F.3d 1124, 1135–36 (10th Cir. 2011)). Volume III contains only the Notice of Intent to Discipline, and the party has articulated the important interest at stake that she seeks to protect—that it contains private and sensitive information protected from public disclosure by Utah law. See Utah Code Ann.

§ 63G-2-305(10).  For these reasons, we GRANT Appellant's motion to seal Volume III of the Opening Brief Appendix.

No. 20-4053, *Shepherd v. Robbins*
**BRISCOE**, Circuit Judge, concurring in part and dissenting in part.

This suit involves claims arising under both the Fourth and Fourteenth Amendments. The district court granted Defendant's motion for summary judgment, concluding that qualified immunity barred the claims. Because the relevant facts are undisputed and, for purposes of this appeal, the parties do not debate whether Defendant's conduct violated Leyva's constitutional rights, we are left only to address whether Defendant's conduct violated clearly established law. *See Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam). I agree with the majority that Defendant violated Leyva's clearly established Fourth Amendment rights by executing a traffic stop when he had no legal basis to do so. I also agree that Defendant violated Leyva's clearly established Fourteenth Amendment equal protection rights when he used his authority as a highway patrolman to execute the traffic stop. But, contrary to the majority, I would conclude that Defendant's conduct as the HDTR Coordinator violated Leyva's clearly established Fourteenth Amendment equal protection rights.

As regards Leyva's Fourteenth Amendment claims, the majority correctly notes that one individual's power over another can play a key role in sexual harassment cases. In the employment setting, a power imbalance may embolden a supervisor to sexually harass his or her employee. *See Lankford v. City of Hobart*, 27 F.3d 477, 480 (10th Cir. 1994). This power imbalance can also be abused in teacher-student relationships, *see Sh.A. ex rel. J.A. v. Tucumcari Mun. Schs.*, 321 F.3d 1285, 1289 (10th Cir. 2003), or when a private citizen seeks a permit or license from a government employee who has the

final say on whether a permit or license will issue, *see Johnson v. Martin*, 195 F.3d 1208, 1218 (10th Cir. 1999); *Whitney v. State of N.M.*, 113 F.3d 1170, 1174–75 (10th Cir. 1997).

The majority concludes that a power imbalance was present when Defendant was acting as a highway patrolman, but not when he was acting as the HDTR Coordinator. I agree that when Defendant was acting as a highway patrolman, the power imbalance was clear and requires little explanation beyond the obvious. When Defendant executed the traffic stop, he had no legal basis to do so. He used his patrol car and his state-derived authority as a patrolman to pull Leyva over in her vehicle so he could flirt with her. The majority correctly concludes that a reasonable officer would know such behavior was unlawful and that our case law makes clear that such conduct would violate Leyva's equal protection rights.

In contrast, the majority would grant Defendant qualified immunity for his actions when he interacted with Leyva in his role as the HDTR Coordinator. Although Defendant served as the HDTR Coordinator under state authority because he was a patrolman, the majority, nonetheless, concludes that "Defendant's role as manager of the HDTR and [Leyva's] role as Liaison for WCT created a commercial relationship between Defendant and [Leyva] based on a contract between two entities," which would not have put Defendant on fair notice that his conduct violated equal protection rights. In other words, the majority concludes that Defendant could not have known to view himself as a government actor with government authority when he acted as the HDTR Coordinator.

2

I disagree with this conclusion. Even though Leyva's employer had a contract with the highway patrol, Defendant's role as a highway patrolman (and the attendant power of that position) continued to influence the parties' power dynamic when Defendant interacted with Leyva on HDTR matters. In fact, Defendant made his "joke" about pulling over Leyva—a joke which became reality—in the context of discussing HDTR matters. The majority's conclusion that Defendant occupied a position of "commercial authority"—not governmental authority—over Leyva is a difference without meaning, given that his "commercial authority" was derived directly from his government position as a patrolman.

Further, even if we could assume that the relationship of the parties and Defendant's attendant roles could be neatly compartmentalized, their "commercial relationship," standing alone, created a power imbalance recognized in our case law, which would have put Defendant on notice of his illegal activity. In *Johnson*, James Martin, the former Director of the Building Codes and Enforcement Department of the City of Muskogee, Oklahoma, was accused of abusing his authority to issue building permits in exchange for sexual gratification in violation of the Equal Protection Clause. 195 F.3d at 1211. Over half a dozen women alleged that Martin advanced sexual comments, inappropriate touching, and attempts at forced sex while they sought building code approval and permits from him. *Id.* at 1211–13. After the women filed suit, Martin argued that he was entitled to qualified immunity because, at the time of his alleged conduct, "it was not clearly established that a public official who used his position to

3

sexually harass a nonemployee violated the Equal Protection Clause of the Fourteenth Amendment." *Id.* 1215. We disagreed.

In rejecting Martin's argument, we first discussed the cases decided in the context of government supervisors sexually harassing their employee subordinates. *Id.* at 1216–17. Those cases relied largely on the supervisors' abuse of the authority vested in them by the nature of their government jobs. *Id.* Expanding on that discussion, we wrote, "[i]n our view, [the case law] illustrates the obvious proposition that public officials frequently exercise governmental authority in many ways not involving their authority over subordinate employees." *Id.* at 1218. For example, "police officers exercise governmental authority in stopping motorists, health officials exercise authority in inspecting restaurants, judges exercise authority in sentencing defendants, and building inspectors (like the defendant Mr. Martin) exercise authority in reviewing applications for permits and assessing compliance with municipal codes." *Id.* "There is no indication in [the earlier] decisions that a public official's abuse of governmental authority in furtherance of sexual harassment in the employment setting is fundamentally different than when the abuse of authority occurs outside the workplace." *Id.* 1217. We concluded that "a public official's reasonable application of the prevailing law would lead him to conclude that to abuse *any one of a number of kinds of authority* for purpose of one's own sexual gratification . . . would violate the Equal Protection Clause." *Id.* at 1218 (emphasis added).

Here, Defendant's power and authority as the HDTR Coordinator resembles that of the building inspector in *Johnson*. Like a building inspector who controls government

permits, Defendant served as a gatekeeper to the public for government towing jobs. Like the plaintiffs in *Johnson,* Leyva's only option was to work with Defendant to obtain favorable outcomes for her employer. The existence of a business contract between Leyva's employer and the highway patrol (a contract Leyva likely had no role in drafting) did not automatically remove the power imbalance between the parties. In fact, it exacerbated it.

Defendant's role as HDTR Coordinator vested him with additional governmental authority. He was responsible for assigning government towing jobs among the three contracted towing companies, and the record indicates that he personally influenced this process. *See, e.g.*, Aplt. App., Vol II at 135 (quoting text messages sent between Leyva and Defendant, including Defendant's response to Leyva's request for help getting her company back into the towing rotation: "Ok, so you can stop stressing out. I just called dispatch and you're now on the rotation"). Leyva worked for a government-contracted towing company, and Defendant had the ability to affect whether Leyva's employer would receive towing jobs. Leyva felt pressure to appease Defendant, not only to receive favorable treatment for her employer, but to protect her own job. *See id.* at 134 (quoting Leyva's text to Defendant: "I'm getting pressure from both sides . . . I was pulled in the office this morning because they are talking about putting [a different employee] back on the rotation stuff because I am not making these things happen with hywy . . . I'm sweatin here . . . . a little help???"). Defendant used his authority and Leyva's compliance for his own sexual gratification. *See Johnson*, 195 F.3d at 1218. The case law prohibiting Defendant from using his authority to sexually harass Leyva has been clearly established

for decades. *Id.* An HDTR Coordinator exercising governmental authority to effectuate a government towing contract could easily be added to the list of examples in *Johnson* of government employees exercising governmental authority over others for their own sexual gratification. *See id.* The complaint, therefore, has alleged conduct that violated Leyva's clearly established constitutional rights under the Equal Protection Clause of the Fourteenth Amendment.

While I concur in the majority's Fourth and Fourteenth Amendment conclusions regarding the traffic stop, I respectfully dissent from the conclusion that Defendant's interactions with Leyva in his capacity as the HDTR Coordinator did not violate clearly established law, which protects Leyva's equal protection rights. I would reverse the district court's grant of summary judgment to Defendant and remand for further proceedings.